## Case No. 16,750.

UNITED STATES v. WONSON.

[1 Gall. 5.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

CIRCUIT COURTS—REVIEW OF DISTRICT COURT— APPEAL AND ERROR.

No appeal lies from the district to the circuit court in any causes, except civil causes of ad-

[1] [Reported by John Gallison, Esq.]

miralty and maritime jurisdiction. Therefore in debt for a penalty, tried in the district court, no appeal lies. Where a cause has once been tried by a jury in the district court, there cannot, even supposing an appeal lay, be a new trial by a jury at the circuit court. A writ of error is the proper process to correct the errors of the district court in common law actions. See Curtis, Adm. Dig. tit. "Appeal," pp. 53–60.

[Cited in Stearns v. Barret, Case No. 13,337; Mayer v. Foulkrod, Id. 9,341. Approved in Westcott v. Bradford, Id. 17,429. Cited in U. S. v. Jarvis, Id. 15,469; Kennedy v. Bank of State of Georgia, 8 How. (49 U. S.). 611; Knickerbocker Ins. Co. v. Comstock, 16 Wall. (82 U. S.) 269; Ruddick v. Billings, Case No. 12,110; U. S. v. 37 Barrels of Rum, Id. 16,467.]

[Appeal from the district court of the United States for the district of Massachusetts.]

This action was debt for a penalty incurred under the 3d section of the embargo supplementary act, Jan. 9, 1808, c. 8 [2 Stat. 453]. The defendant [Samuel Wonson, Jr.] pleaded in the district court, the general issue, nil debet; upon which issue was joined, and a verdict was found for the defendant; upon which the district court gave judgment for the defendant [case unreported], and the United States filed an appeal to this court. And now at this term two questions were made.

George Blake, U. S. Dist. Atty.
William Prescott, for defendant.

STORY, Circuit Justice (the District Judge not sitting in the cause), after stating the facts, said:

Two questions have been argued: (1) Whether this action, being a common law suit, can be brought before this court by appeal, or ought not to be by writ of error. (2) Supposing the action rightfully before the court, whether the facts are again to be submitted to a jury in this court, or the appeal submits questions of law only for the consideration of the court.

By the judiciary act of 1789, c. 20, § 21 [1 Story's Laws, 61; 1 Stat. 83, c. 20], an appeal is given from the district court to the circuit court from final decrees in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum or value of $300, exclusive of costs. And by the 22d section of the same act, final decrees and judgments in civil actions in the district court, where the matter in dispute exceeds the sum or value of $50, exclusive of costs, may be re-examined in the circuit court by a writ of error. In the language of this act, there is a marked distinction between appeals and writs of error; the former being applied to admiralty, the latter to common law proceedings. And so it was considered by the supreme court of the United States, in Wiscart v. D'Auchy, 3 Dall. [3 U. S.] 321, and in U. S. v. Goodwin, 7 Cranch [11 U. S.] 108. Under this statute of 1789, it is very clear that the appellate jurisdiction of the circuit court, in civil actions at common law, could be exer-

cised by way of writ of error only, and not by appeal.

But it has been supposed, that the act of 3d March, 1803, c. 93, § 2 (6 Laws [by authority], 315 [2 Stat. 244, c. 40]), has given the remedy by appeal, as well in common law as in admiralty actions, where the sum exceeded $50. That act provides, "that from all final judgments or decrees in any of the district courts of the United States, an appeal, where the matter in dispute exclusive of costs shall exceed the sum or value of $50, shall be allowed to the circuit court next to be holden in the district where such final judgment or judgments, decree or decrees, may be rendered; and the circuit court or courts are hereby authorized and required to receive, hear, and determine such appeal;" and from all final judgments, or decrees, rendered, or to be rendered, in any circuit court, &c. in any cases of equity, of admiralty and maritime jurisdiction, and of prize or no prize, an appeal, where the matter in dispute, exclusive of costs, exceeds the sum or value of $2,000, shall be allowed to the supreme court of the United States. This act does not in terms repeal the appellate jurisdiction of the circuit court by writ of error in civil actions, provided by the act of 1789. And unless such were the intention of the legislature, we ought not to construe the repeal as within the purview of the act. That the process by writ of error yet remains, as provided by the act of 1789, seems admitted by the invariable practice in every other circuit, and was conceded by the court in the case of U. S. v. Goodwin, 7 Cranch [11 U. S.] 108.

But it is argued, that even if the remedy by error remain, yet the act of 1803 has given the party an election to proceed by appeal, and that the expression, "all final judgments," is peculiarly pointed to common law proceedings, and "all final decrees" to admiralty proceedings. It seems admitted, that if the expression had been confined to the words, "all final decrees," the act would have been restrained to the latter proceedings. But it is very clear, that the word "judgment" is not used in the act in contradistinction to "decree," but rather as explanatory or equivalent. For in the same clause, the word "judgment" is exclusively applied to admiralty, and equity and prize causes. If then the word be not used in a sense manifesting a restriction to common law actions, the argument built upon it is without foundation.

Upon the construction urged by the United States, the parties below would have a right to an appeal to the next circuit court, or to a writ of error within five years to the same court. And yet in either case, as I shall presently show, the same points, and none others, would come before the court. Can it be imagined, that the legislature could intend a difference of remedy in cases where no benefit could arise? or to provide for the re-examination of the same cause at the next court only, and yet at the same time provide for its re-examination within five years? In order to understand the act of 1803, let us consider the mischiefs, which were supposed to exist previous to its passage. In the first place, common law causes might be re-examined in the circuit court, where the sum in dispute exceeded $50; but admiralty causes could not be re-examined, unless the sum in dispute exceeded $300. This was an inequality difficult to sustain upon any acknowledged principles. For, generally speaking, admiralty causes might involve as important and intricate questions, as the questions on the other side of the district court. In the next place, causes of admiralty and maritime, as well as of equity jurisdiction, were in all the superior civil law courts reviewed by the process of appeal, and not of error. The nature and effect of an appeal, and the manner of conducting it, were well understood in causes of this character. But the act of 1789 had provided, that equity and admiralty causes should be re-examinable in the supreme court by writ of error. See Mayer v. Foulkrod [Case No. 9,341]: 1 Kent, Comm. (5th Ed.) 342, note a; 4 Kent, Comm. (5th Ed.) 278, note. Much embarrassment arose from this restriction; and it was very early decided, that in such cases the court could not examine any facts, but what appeared in the decree of the court below; and that if there was no statement of facts in the decree, the parties were forever precluded from correcting an erroneous decision. Wiscart v. D'Auchy, 3 Dall. [3 U. S.] 321; Jennings v. The Perseverance, Id. 337: Blaine v. The Carter, 4 Dall. [4 U. S.] 22; U. S. v. Hooe, 1 Cranch [5 U. S.] 318. In admiralty and prize causes, foreign sovereigns, as well as foreign subjects, might be deeply interested in the investigation of the facts, as well as the law of the case. In equity causes, the decree was necessarily shaped in many instances by a minute inquiry into facts, and the result of the evidence, as well as the propriety of relief, were questions almost inseparably connected. An appeal in both classes of causes, would enable the highest tribunal of the nation to dispense justice with greater certainty, and greater satisfaction, than the mode already prescribed, entangled as it was with the technical niceties of the common law. Considerations of this nature, combined with the acknowledged benefits of an adherence to established usages, could not fail to attract the attention of the legislature. And accordingly first by the act of 1801 [2 Stat. 89], which I shall hereafter consider, and subsequently by the act of 1803, now before us, the legislature placed admiralty and common law causes, as to appellate jurisdiction, in the same grade; and gave a remedy by an appeal to the supreme court (instead of a writ of error) in causes of admiralty, prize and equity jurisdiction.

If then the apparent mischiefs are completely done away; if the obvious intention

of the act is satisfied; if the remedy, as to a review of the law, is in full force; why, let me ask, should we extend the construction of doubtful expressions beyond these legitimate purposes?

The construction of the act, which I have assumed, is, as I apprehend, illustrated and aided by reference to the judiciary act of 13 Feb. 1801, c. 75 [2 Stat. 89, c. 4], which was soon afterwards repealed. The second section of the act of 1803, is a substantial, and so far as this inquiry extends, is a literal re-enactment of the 33d section of that act. 5 Smith's Laws, 253 [2 Stat. 98]. The 34th section of the same act provides, that all final judgments in civil actions at common law in any circuit courts, whether brought there by original process, or removed there from the state courts, and "all final judgments in any of the district courts of the United States may, where the matter in dispute, exclusive of costs, shall exceed the sum or value of $2,000," be re-examined by a writ of error returnable to the supreme court of the United States.

Now it has been held, that as the law stood after the passing of this act, and before its repeal, the parties had an election, where the cause exceeded the value of $2,000, to carry it, under the act of 1789, by a writ of error from the district to the circuit court, but without the privilege of proceeding further; or under the 34th section of the act of 1801, to proceed with the cause by the same process directly to the supreme court, passing by the circuit court. Yet if it were true, that under the 33d section of the act of 1801, (a substantive original of the 2d section of the act of 1803) a civil action at common law might have been carried by appeal to the circuit court, where it exceeded $2,000 in value, it might afterwards, under the act of 1789, have been removed by writ of error to the supreme court; although, if the same cause had been carried to the circuit court by writ of error, (which might well be), and not by appeal, the supreme court would have had no jurisdiction. It would, therefore, on such construction, be in the power of the appellant or dissatisfied party, to give or oust the jurisdiction of the supreme court in the same cause; not from any difference of the nature of the questions to be reviewed, but merely from the nature of the process to be employed. Against the obvious intention also of the act, he might obtain the opinion of three successive courts, when the law studiously pointed the election to one of two, the circuit or the supreme court. If such a construction were not admissible under the act of 1801, neither can it be under the act of 1803. The language is the same in both; and the words are completely satisfied by restraining the "judgments and decrees," from which an appeal lies, to those rendered in admiralty and maritime proceedings, leaving civil actions at common law, as they stood under the act of 1789. If, indeed, a contrary

legislative intention were apparent, we should bow to it. But as such intention may well be doubted; as the inconveniences, which I have suggested, would arise from the construction now contended for by the United States; and as an uniform practice to the contrary has prevailed in every other circuit, and seems to have been recognised by the supreme court itself; there seems little reason at this time to presume, that the legislature could intend to subject the appellate jurisdiction of its courts to such unmeaning niceties.

My opinion accordingly is, though it is formed with much diffidence, that the act of 1803, so far as it respects the district court, uses the word appeal in a technical sense, and applies it to "decrees and judgments" in causes of admiralty and maritime jurisdiction only. So that now such causes may be removed to the appellate court, where they exceed $50 in value; whereas, before that time, they must have exceeded $300 in value. As to the appellate jurisdiction in civil causes at common law, it remains to be exercised by way of writ of error, regulated by the provisions of the act of 1789. But it is not my intention, whatever might be my opinion, to rest the present cause on this point. The second point which has been argued, involves a question of a magnitude vastly more important; and as (in my opinion) the decision of it definitely disposes of the present cause. I shall confine my judgment to it.

Supposing the present cause is rightly before the court, it is admitted, that there are no errors apparent upon the record, which require the correcting power of the court. The counsel for the United States propose to try, by a new jury, at the bar of this court, the whole facts which have been settled by the verdict of a jury in the court below, and on which, it is admitted, that court delivered a right judgment. This right is claimed, not from any error, for which a new trial ought to be granted, at the discretion of the court, but as an inherent right of the party, to be exercised at his own discretion, and grounded upon the nature of the process, by which this cause has been removed to this court; viz. an appeal. If by law the United States have this right, it is the duty of the court to grant the new trial, whatever might be their own opinion, as to the wisdom or danger of such a practice. But, called upon to examine the ground of this right, I can neither shrink from the inquiry, nor hesitate in pronouncing my own decision. I have examined the question with deliberation and care; and if I am wrong in the result, I have the consolation to know, that there exists a higher tribunal, competent and willing to review my errors, and to apply an adequate remedy. No clause has been shown, and none probably exists in the laws of the United States, which in the most distant manner hints at such a second trial. It rests altogether upon the local practice in our state courts, and is engrafted on a word first used by, and now

generally confined to, courts which never acknowledged the trial by jury. The word "appeal" comes from the civil law, and the nature and operation of an appeal, in its technical sense, cannot be a subject of doubt in the proceedings of courts governed by that law. It is sometimes, indeed, used with us in legal language to denote the nature of appellate jurisdiction, as distinguished from original jurisdiction, without any regard to the particular mode, by which a cause is transmitted to a superior jurisdiction. In this sense it is used by Blackstone (3 Bl. Comm. 56), where he speaks of the court of exchequer chamber, as a court "that hath no original jurisdiction, but is only a court of appeal, to correct the errors of other jurisdictions." Now it is well known, that this court determines causes brought from the courts of common law, not by way of appeal, but by writs of error. So also the house of peers is considered by the same elegant writer as the supreme court of appeal of the empire. There are some other senses, in which the word occurs in the common law, which I may pass over in silence as they have no application to the present inquiry. Appeal, ("appellatio" in the civil law), is defined "ab inferioris judicis sententiâ ad superiorem provocare:" the removal of a cause from the sentence of an inferior to a superior judge (Calvin. Lex. "Appellatio"; Shep. Abr. "Appeal"); or as Blackstone has expressed it (4 Bl. Comm. 312), a complaint to a superior court of an injustice done by an inferior one. Calvinus, in his Lexicon, has collected the definitions given by many learned civilians; but they all resolve themselves into the above. Each of these definitions accurately states the meaning, but not the mode of prosecution or effect of an appeal.

The remedy by appeal, as known and practised in England, is in a great measure confined (for I speak not of summary proceedings before magistrates, or appeals of death or robbery) to causes of equity, ecclesiastical and admiralty jurisdiction; in all of which no jury intervenes. In the courts possessing these respective jurisdictions, the judge is in general the sole arbiter of fact and of law, and the mode of proceeding is borrowed, almost exclusively, from the civil law. It is undoubtedly true, that in courts proceeding according to the course of the civil law, an appeal from an inferior to a superior tribunal removes the whole proceedings, and usually, though not invariably, opens the facts, as well as the law to re-examination. Wiscart v. D'Auchy, 3 Dall. [3 U. S.] 321: "Nam in appellatione a sententiâ definitivâ, licet, non allegata allegare et non probata probare;" Clerke, Praxis Adm. tit. 54; Yeaton v. U. S., 5 Cranch [9 U. S.] 281; Cod. lib. 3, tit. 63, § 4; Carth. 474; 3 Bin. 88.

In courts of equity in England it is otherwise, for Blackstone (3 Bl. Comm. 455), speaking on this subject, says, "it is a practice unknown to our law, though constantly followed in the spiritual courts, when a superior court is reviewing the sentence of an inferior, to ex-

amine the justice of the former decree by evidence that was never produced below." And in the appellate courts in England, in proceedings according to the course of the common law, writs of error are the modes, by which these courts exercise their jurisdiction,—and the facts once settled by a jury are, while the judgment remains in force, forever conclusive upon the parties. A verdict of a jury can only be set aside by such courts, where the judgment is reversed, and a venire facias de novo is awarded. We should search in vain, then, in the common law, for an instance of an appellate court re-trying the cause by a jury, while the former verdict and judgment remained in full force. The practice, indeed, seems to be a peculiarity of New England, and, if I am not misinformed, does not exist in more than one (if any) other state in the Union. So early as the year 1642 (Colony Laws. tit. "Appeal," p. 3) a colonial statute of Massachusetts provided for appeals in all cases, civil as well as criminal, from magistrates to the county courts, and from these to the court of assistants, and declared, "that if the point of appeal be in matter of. law, then to be determined by the bench; if in matter of fact, by the bench and the jury;" and further, "that in all cases of appeal, the court appealed to should judge the case according to the former evidence, and no other, rectifying what was amiss therein." The practice of appeals thus established, was recognised and confirmed by several provincial statutes, and even extended by the admission of new evidence, and new pleas on the appeal. St. 7 Wm. III. c. 8; 9 Wm. III. c. 2; 11 Wm. III. cc. 1, 3; 13 Wm. III. c. 15. The same practice has continued to the present time, and has been sanctioned by our courts, and by the legislature (St. July 3, 1782, §§ 2, 3, 1 Mass. Law Rep. 71; St. July 3, 1782, § 3, 1 Mass. Law Rep. 74; St. March 11, 1784, § 6, 1 Mass. Law Rep. 147; St. March 16, 1784, § 3, 1 Mass. Law Rep. 160; St. October 30, 1784, § 8, 1 Mass. Law Rep. 160), and is the undoubted privilege of every citizen of Massachusetts in our state courts. But it is a privilege existing by statute, and not by common law, and is considered by our courts as a mere legislative, and not a constitutional privilege. Mountfort v. Hall, 1 Mass. 443. I have reason also to believe that the same practice in the state courts of New-Hampshire (1 Laws N. H. 89) and Rhode-Island depends altogether on statutory law (1 Laws R. I. p. 150, § 3). From the prevalence of this practice in the courts of this and the neighboring states, concurring with the infrequency of appeals from the decisions of the court below, in civil actions at common law, it has happened that this question, if it has not slumbered sub silentio, has at least never received a final decision.

Before the act of 1803, it is very certain that there could not be a second trial by jury in the appellate courts, for the proceeding was by writ of error, which, according to the law of the courts of the states, as

well as of the United States, could in general remove only errors of law, and if affirmed, left the facts decided by the former verdict conclusive on the parties. If, indeed, the act of 1803 gives on all appeals this new · trial, however consonant it may be with our own habits, we should recollect that it overthrows the · established jurisprudence of at least three fourths of the states, and abolishes a fundamental principle of the common law. Many learned men among ourselves have lamented the existence of reviews and appellate trials, from their pernicious tendency in tempting to the horrible crime of perjury, and ·in provoking vexatious litigation. These considerations ought not to outweigh the positive regulations of law; but they afford ground to believe, that the counsel for the United States may be contending for what the legislature, at one period, must have considered a mischievous novelty.

Let us now consider the language of the act. It declares "that the circuit court or courts are hereby authorized and required to receive, hear, and determine such appeals;" and in precisely the same words delegates the same authority to the supreme court in the exercise of their appellate jurisdiction. In these words I can discern nothing that alludes to a new trial by a jury. The court (not the jury) are to receive, hear, and determine the appeal; that is, the whole cause brought up by appeal. In many, nay, in a majority of cases, there is nothing to try but facts, and these, when decided, leave nothing for the court to determine. It is certain that these words delegate no authority to the supreme court, to try the facts by a jury in causes coming by appeal before that court. And it will be difficult to contend that the same words, in the same section, applied to the same subject matter, are to receive a different construction. Nor can the word "appeal" be with propriety allowed, as importing a re-examination of the facts by a jury. Its received sense in other legislative acts is obviously different (Act Feb. 27, 1801, § 8; 5 Smith's Laws, 270 [2 Stat. 106]), and in the language of the civil, and even the common law, it is directly the reverse. Further: the same section provides, that "such appeals shall be subject to the same rules, regulations and restrictions, as are prescribed in law in case of writs of error." Now by law (Act 1789, § 22) there can be no reversal of a judgment for any error of fact, nor for error in ruling a plea in abatement; and writs of error may be brought within five years, and security must be taken to prosecute such writs and to answer damages and costs, before the writs of error are allowed. It is contended that this clause is confined to appeals to the supreme court, and does not extend to appeals to the circuit court, because such appeals must be to the next

court. If this be true, ought it not to induce a doubt, whether the legislature could have intended to apply the remedy by appeal to cases, which were before remediable by writ of error in the circuit court; since errors in ruling pleas in abatement and errors of fact would be subjected to revision? Security to pay damages and costs was requirable in all cases where a writ of error lay, but not where an appeal lay, by the act of 1789. If the clause now alluded to, refers to the supreme court only, as the propriety of security in the one court, as well as the other, would seem to result from the same probable mischiefs, the argument would rather incline to show, that the appeals to the circuit court were considered as restrained to admiralty causes, in which no security had been required by the former law. But I do not so construe the clause. The whole is coherent in language and in grammar; and construing it distributively, it may well be maintained, that an appeal to the circuit court should be governed by the same rules and regulations, as a writ of error, viz.—that nothing but errors of law could be examined;—and by the same restrictions, viz. the taking of security to prosecute the appeal with effect and to pay all costs and damages. Where the language of the law pointed to so reasonable a course, I should feel no desire, by any ingenuity of construction, to escape from so beneficial a result.

It has been further argued, that the 34th section of the act of 1789 (1 Stat. 92), which provides "that the laws of the several States, except where the constitution, treaties or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in courts of the United States where they apply," authorizes the court to retry this cause by a jury, in consonance with the laws of this commonwealth. If this argument were correct, the courts of the United States would be completely governed by the state practice in all cases; and reviews with all their accompaniments would be the familiar guests of the circuit court. Nay, even a new trial had in the present case would not be final, but it might again be reviewed. But it is very clear, that such has not been the construction of that section. Its true exposition is, that the rights of persons and rules of property, as settled in the states, shall be guides to the courts of the United States in controversies depending before such courts. See Swift v. Tyson, 16 Pet. [41 U. S.] 1, 18. As, for instance, the mode of conveying real estate by deed or by will, the right in cases of intestacy of the heirs, in the descent and distribution of estates. In the case of Massie v. West, 6 Cranch [10 U. S.] 148, which was a suit in equity before the circuit court of the United States, the facts had been found by a jury in conformity to the state

practice in the chancery courts in Kentucky; but the court set aside the verdict as founded in irregularity.

I have examined the subject thus far upon the supposition, that it depended altogether upon the acts of the legislature. But it takes a higher range, and involves the exposition of a great constitutional right. Whenever it becomes our duty to decide on the constitutionality of laws, sound discretion requires, that the court should not lightly presume an excess of power by the legislative body; nor so construe the generality of words, as to extend them beyond its lawful authority, unless the conclusion be unavoidable. The constitution of the United States provides "that the supreme court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as congress shall make." At the time when the constitution was submitted to the people for adoption, one of the most powerful objections urged against it was, that in civil causes it did not secure the trial of facts by a jury. And that the appellate jurisdiction of the supreme court, both as to law and fact, would enable that court, with or without a new jury, to re-examine the whole facts, which had been settled by a previous jury. The advocates of the constitution endeavored to remove the weight of this objection by showing, that it was within the authority of congress to provide in all cases for the trial by jury; and that the appellate jurisdiction of the supreme court as to facts, did not necessarily include a re-examination of the facts so settled by a jury; and further, that it might be with the strictest propriety held, that when a writ of error is brought from an inferior to a superior tribunal, the latter had jurisdiction of the fact as well as of the law, and this was all the constitution intended. Whoever will read the commentary on the constitution, entitled "The Federalist," will learn how deeply the subject at that time interested the several states of the Union, and with what singular zeal and acuteness it was discussed. I advert to this work with the more readiness, because it is the acknowledged production of three eminent statesmen, of whom one was afterwards elevated to the highest judicial office in the country, and to him the comments on the judicial department have been generally attributed. 2 Federalist, No. 81, No. 83.

With this view of the defects of the constitution as to the trial by jury, and of the apprehensions entertained of new trials by the appellate courts, we shall be able to comprehend the scope and object of the amendment, which was proposed, and almost immediately and unanimously adopted, as part of the constitution. It is in these words: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. And no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law." Be-

yond all question, the common law here alluded to is not the common law of any individual state, (for it probably differs in all), but it is the common law of England, the grand reservoir of all our jurisprudence. It cannot be necessary for me to expound the grounds of this opinion, because they must be obvious to every person acquainted with the history of the law. Now, according to the rules of the common law the facts once tried by a jury are never re-examined, unless a new trial is granted in the discretion of the court, before which the suit is depending, for good cause shown; or unless the judgment of such court is reversed by a superior tribunal, on a writ of error, and a venire facias de novo is awarded. This is the invariable usage settled by the decisions of ages. Upon a writ of error, the appellate court can examine in general errors of law only, and never can re-try the issues already settled by a jury, where the judgment of the inferior court is affirmed.

According to the obvious intention of the amendment, the legislature then could have no authority to give an appellate jurisdiction, the power to re-examine by a jury the former decision of another jury, while the judgment below stood unreversed. As little reason could there be to imagine the legislature would voluntarily transcend its constitutional authority. The language must be very clear and precise, which would impose on the court the duty of declaring the solemn act of the legislature to be void. The court could never incline so to construe doubtful expressions, much less to seek astutely for hidden interpretations, which might darkly lead to such a result. The word "appeal" has no acknowledged general sense necessarily involving such a conclusion even in this commonwealth; and certainly in the common and civil law it can find no foundation, on which it may rest. It is not a little remarkable, that the most strenuous objection against the constitution originally contemplated a reverse sense of the word, viz. that the court, and not the jury, might review the facts. If this be true, then the present attempt, to claim of right a new trial in the appellate court, is a novelty, to which we are bound to answer "Nolumus leges communes mutari."

On the whole, on this last point I am clearly of opinion, that an appeal in a common law suit from the district court removes errors of law only for the consideration of this court; and that we are bound to deny a new trial of the facts by a new jury. As it is admitted there are no such errors of law on record, the judgment of the court below ought to be affirmed. The view, which I have taken of this point, seems in my judgment to add strength to the opinion expressed on the former point. I will only remark in confirmation of my opinion on both points, that on a careful inquiry, I find that the invariable practice in every other circuit is, in like cases, to bring the suit by writ of error, and not by appeal before this court; and that no instance has ever occurred, in which a new trial by the jury has been al-

lowed in the appellate court. See, also, Ross v. Rittenhouse, 2 Dall. [2 U. S.] 160.

There were a great number of causes on the docket standing on the same ground, and as the district attorney ultimately expressed himself satisfied with the opinion of the court, and declined to have a re-examination at the supreme court, the circuit court ordered this cause, as well as all the others, to be dismissed for want of jurisdiction.