The facts in this case sufficiently appear in the opinion of the court, which was delivered by —
Shaw, C. J.
This is a summary proceeding in a case of insolvency, under the powers granted to this court by the general insolvent law, (St. 1838, c. 163, § 18,) to have jurisdiction, as a court of chancery, in all cases arising under the act, upon the bill, petition or other proper process, of any party aggrieved by any proceedings under the act. In the present case, an injunction was granted to stay proceedings, without notice, upon a representation that the exigency was urgent, to inquire into a course of proceeding alleged to be irregular and illegal; and, if found so, to correct and restrain it before another meeting of the creditors of the said insolvent, which was then notified, and was to be held very soon. Generally, we have regarded such temporary injunctions, granted without notice, as provisional only, and founded in necessity, to prevent irreparable injury, and to keep matters in statu quo, until notice can be given and the parties be heard. The form of such injunction usually is, to continue until dissolved by the court or some one of the judges thereof, and the understanding is, that the party against whom it is granted may be heard at very short notice, upon an application to dissolve it. In general, therefore, the question presents itself in nearly the same form, and is to be examined in the same mode, and upon the same evidence, as the original application for a temporary injunction would have been, if notice to show cause had been given, and the adverse party had attended to oppose it.
This proceeding was commenced by a petition to this court *383 by George E. Betton, Esq., assignee of the estate and effects of Robert B. Macy, an insolvent debtor, praying for an injunction to go to Frederic H. Allen, Esq., commissioner of insolvency, William B. Mitchell and others, claiming to be creditors of the insolvent debtor, who have proved their debts. The prayer is placed upon grounds set forth in the petition, and substantially admitted or proved by the minutes of the clerk, and the files and documents in his custody. Upon the facts the case appears to be this.
A first meeting was duly called and held. Several creditors then proved their claims. The petitioner, Mr. Betton, was duly chosen assignee, by a majority in value of the creditors who had thus proved, and an assignment was made to him by the commissioner, and he entered upon the duties of his office, and proceeded in the execution of them. At the regular time, and in due course, a second meeting was called and held; and, at an adjournment of such second meeting, the respondents, Mitchell & Co., offered proof of then debt, which was allowed by the commissioner. The assignee appealed from the decision of the commissioner allowing such debt, pursuant to § 4 of the general insolvent law, which appeal, the debt being a large one, was taken to this court, “ to have the said claim determined at law.” Notice thereof was given, according to the statute, to the creditors, to the commissioner, and to the clerk, and was duly entered on the minutes. The appeal was duly entered at the proper time in, this court, and is yet pending and undecided.
Subsequently, an application was made to the commissioner by creditors, in which said Mitchell & Co. joined, to call a special meeting of creditors, to consider and act upon a proposal to remove the assignee. This was founded on a provision in the 11th section of the act, which provides that it shall be in the power of the creditors, by such a vote as is provided in the 2d section for the choice of assignees, at any regular meeting, called by order of the judge for that purpose, &c., to remove all or any of the assignees; which was extended, by a subsequent provision of the same section, to a single assignee. Such a meeting was called, and, upon taking the vote of the *384 creditors, said Mitchell & Co., though objected to, were permitted to vote as creditors; and, including their debt, a majority in value of the creditors voted to remove the as-signee. It was left a little uncertain, at this hearing, whether the commissioner had actually passed an order pursuant to this vote, removing the assignee, when this petition was filed and the injunction notified to him, or whether he was about doing so. But this is, perhaps, immaterial.
In the above cited passage, giving power to remove an assignee, it is to be done by such a vote as is provided in the 2d section for the choice of assignees. In recurring to the 2d section, it appears that, at the first meeting, debts are to be proved and allowed, and the creditors shall then proceed to choose an assignee, &c., “the choice to be made by the greater part in value of the creditors, according to the debts then proved,” with a proviso not material here.
The question, therefore is, whether a person whose debt has been formally allowed by the commissioner, but from which allowance an appeal has been taken and prosecuted according to law, is a creditor, entitled to vote as a creditor, after such appeal has been taken and perfected, and before any judgment of the appellate court given upon it.
This question is, we believe, a new one under the insolvent law, and is not without its difficulties. Upon the first choice of an assignee, those whose debts have been allowed by the commissioner will, of course, vote; for, until the choice or appointment of an assignee, the hearing on any claim is of necessity ex parte, and there can be no one, as a representative of the creditors, to object to the proof, or take an appeal from the allowance by the commissioner, and the case here presented cannot exist. Practically, it is probable, no great inconvenience will arise from this source. The very case of insolvency supposes the existence of actual debts more than the debtor can pay, and those presented at the first meeting probably would be the acknowledged and uneontested claims, while those of a more doubtful character, intended to be resisted, would be likely to be postponed, until the creditors interested in opposing them should be represented.
*385 What is the effect of the appeal provided for in this case ? On the part of the creditor, the appellee, it is contended that the allowance of his claim by the commissioner is primd facie evidence of its truth and correctness, and that it must so stand, for all purposes of regulating the action of creditors before him, until reversed and annulled by the appellate court. On the other hand, it is maintained by the assignee and the opposing creditors, that an appeal, as understood, and as the term is employed in our legislation and jurisprudence, vacates and annuls the order or decree appealed from; that such lecree, when an appeal is allowed by law, and is actually taken, is regarded as a mere interlocutory order, which is wholly superseded by the appeal, and that the case stands open, in the appellate court, to the same course of proceeding as if it were originally in that court.
With some exceptions, the court are inclined to the latter view of the question; one of these exceptions is, when a judgment or decree is founded on matter of law, apparent on the face of the record, an appeal is given by Eev. Sts. c. 82, § 6. In such case, it is considered that matters of law only are open on the appeal, though even in this case the judgment of the court of common pleas is vacated, and a new judgment entered in the appellate court. But this modern legislation was, to some extent, a departure from the course of practice in Massachusetts, under which an appeal from a justice of the peace to the common pleas, and from the common pleas to the supreme court, was regarded as an entire abrogation of the judgment appealed from. So that unless some new judgment was afterwards entered, it was wholly void. Even an affirmation of the judgment below, on a complaint to the appellate court, was in the nature of a judgment by default.
As to the general character and effect of an appeal, both in courts of common law and of those following the course of the civil law, we would refer to 6 Dane’s Abr. 442; United States v. Wonson, 1 Gall. 5; Murdock, Appellant, 7 Pick. 303; Murdock v. Phillips Academy, 12 Pick. 244.
But without discussing the question al large, respecting *386 every species of appeal, it will be better to ascertain, if possi* ble, what was intended by the legislature as the effect of an appeal in this case. Mr. Dane, who was thoroughly conversant with the ancient law and practice, considers this allowance of an appeal, in common law cases, as a branch of our judicial proceedings almost peculiar to this state; that it is of civil law origin, and that it removes the cause entirely, subjecting the fact and law to a revision and a re-trial.
One great object of allowing an appeal, affecting a large class of cases, was to give the parties in the appellate court a trial by jury, which, from the constitution of the court, they could not have in the court of the first instance. Sucn were the probate court, and the courts of civil and criminal jurisdiction held by justices of the peace, and others sitting without a jury; but upon appeals, a full trial of fact and law was had in the court appealed to.
But the case under the old law, more nearly analogous to the present, was that of claims upon the estate of a deceased insolvent, examined before commissioners appointed by the judge of probate. They proceeded without a jury, had authority to take the testimony of the parties, and in other respects deviated from the course of the common law. In order to secure to both parties the benefits of a full trial of fact and law, according to the laws governing the rights of debtor and creditor, a somewhat different mode was provided, but coming to the same result. If the claim of the creditor was disallowed, he had a right to bring his action at law at the next court; btherwise he was forever barred. If his claim was allowed, and the administrator was dissatisfied, he simply gave notice to that effect at the probate office, and the claim was stricken out of the list of claims allowed by the commissioner. Of course he was forever barred, unless he commenced an action at the next term of the court, and proceeded to get a judgment in due course of law, to be certified to the judge of probate, to be added to the list of claims allowed. From this view, it is manifest that, upon the dissent of either party, expressed in 1he manner required by law, the report of the commissioners became a perfect nullity, and was no longer available for any purpose.
*387 . This course was changed in form but not in substance, by Rev. Sts. c. 68, § 8. The object seems to have been to simplify the proceedings, and avoid the trouble and expense of bringing a new original action, and secure the same end by more direct means. It provides that any person whose claim shall be disallowed, or any executor who shall be dissatisfied with the allowance of any claim, may appeal, and the claim shall thereupon be determined at common law; and it shall be tried and determined in like manner as if an action had been commenced therefor by the supposed creditor, against the executor or administrator. Here it is manifest, that the adjudication of the commissioners is treated as an absolute nullity.
We have already suggested, that the case of claims against a living insolvent, and the mode of prosecuting them, are •more analogous to those of a deceased insolvent than to any others. In both, there will ordinarily be a large class of claims, about which there will be little or no question, which may be fitly passed upon in a summary way by a commissioner or a judge, requiring them to be verified by the affidavit of the parties only; but there may be another class, depending upon complicated questions of fact and law, which must be tried and decided under all the guaranties given by the law to debtors and creditors. The insolvent law, passed in 1838, was passed soon after the revised statutes went into operation, and has, in this respect, adopted the same provisions, and to some extent borrowed the' language, of the revised statutes. We think the object was to provide for both classes of claims, the contested and uncontested; and the law has directed a course of measures well adapted to both. For this end, it provides that the claim may be passed upon in the first instance, in a summary way, by the commissioner, deciding upon facts without jury, and upon affidavit only, without conformity to the rules of evidence; but it also places it in the power of either party, on complying with the required terms, to take the case out of the class of admitted, and place it in that of contested, claims, in order, as the statute declares, “ to have the said claim determined at law.” And it further *388 declares, that the like proceedings shall be had upon the joining of any issue of fact or law, and also upon the nonsuit or default of either party, as in any action for the same cause, commenced and prosecuted in the usual manner, except that no execution shall issue. The judgment of the court appealed to shall be final, with a right to except in matters of law ; and a judgment, being certified to the judge, shall ascertain the amount, if any, due to the claimant, and the list of debts shall be altered, if necessary, to conform thereto. It appears to us, that such an appeal, taken under such circumstances and upon such views of the law and the rights of the parties, does supersede and annul the order allowing a claim, founded, it may be, upon slight and informal evidence, in its nature provisional and interlocutory, and not intended to stand if contested; and, after such an appeal, the order must be considered as vacated to all purposes, until some judgment of the appellate court is certified to the commissioner. In case the assignee should desert his appeal, and not enter it, or, having entered, should fail to prosecute it, or not succeed in making a successful defence, in all these cases, we think the appellee must obtain a new judgment of the appellate court, founded on proceedings thereon, such as on complaint, default, or verdict, and have it certified to the commissioner, as the basis of his allowing the claim of the creditor, and that such judgment would not revive or give effect to the judgment appealed from.
We think the policy of the statute is this, that, wherever it gives rights and qualifications to creditors, it gives them to those who have proved their debts ; and such proof must be effectual proof, made in the manner provided by law, that is, before the commissioner, if he allows it, and both parties acquiesce, otherwise at the common law, before a court competent to try cases of debtor and creditor, according to established rules of law and evidence. The case of the choice of an assignee at the first meeting is hardly an exception, — 1st, because it is a matter of necessity, and 2d, because the allowance of the commissioner must be primd facie evidence, before an appeal, and there can be no appeal before the choice of an assignee. *389 So the provision for a dividend directs it to be made among such creditors as shall have proved their debts ; § 12. This undoubtedly means proved definitively in the manner provided by law.
The argument from inconvenience is urged against this view, and it is said that the claim of a creditor may be appealed from, and it turns out, upon a trial, that he has a valid demand, yet has had no voice with the other creditors, in the conduct of the proceedings. But perhaps the inconvenience is as great the other way, that one having a large claim may, on his own oath, or an ex pArte hearing, induce the commissioner to allow a claim, when it shall turn out, on a legal trial, that his claim was colorable and groundless, and yet he may have chosen an assignee, and given a direction to the proceedings contrary to the interests and wishes of real creditors. Such was the case cited, where ,one, not justly entitled to prove, had a large claim allowed, and by his own vote appointed the assignee. Ex parte James Baker, 8 Law Rep. 461. We are pressed with the objection, that this construction puts it in the power of an assignee, by appealing, to prevent those creditors from acting and voting, whom he may suppose to be unfavorable to his views. It is dangerous to argue against the existence of a power, from a possibility that it may be abused. Almost all powers given for useful purposes may be perverted to injurious ones. If the power is not sufficiently qualified and guarded, the remedy is with the legislature.
A clause in § 15 was somewhat relied on, that any creditor who has proved his debt may appear, vote, and act, at all meetings of creditors, by his attorney. This leaves the mode and fact of proof just as it stood, and simply gives power to one having a right of appearing personally, to appear by attorney.
The court are, therefore, of opinion, that Messrs. Mitchell & Co. have no right to vote and act as creditors ; that doings of creditors, affected by the vote of Mitchell & Co., and proceedings founded upon it, be vacated, and the case, with this order, be remitted to the commissioner, to proceed in the set *390 tlement of the estate as if no such vote had passed, and that the injunction be dissolved.
G. E. Betton, for himself.
B. F. Hallett, for the respondents.