## McKEON v. CENTRAL STAMPING CO.

(Circuit Court of Appeals, Third Circuit. June 7, 1920.)

### No. 2537.

**1. Jury ☞10—Constitutional right of jury trial is right of jury trial of English common law.**

The right of trial by jury, preserved by Const. Amend. 7, is a right to the jury trial of the English common law, especially as the Declaration of Independence charged the king of Great Britain with depriving the Colonists of such trial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trial by Jury.]

**2. Courts ☞353—State law authorizing new trial on one issue not applicable to federal courts.**

Practice Act N. J. § 73, authorizing a new trial in respect of damages without setting aside the verdict in other respects, is not made applicable to federal courts by Rev. St. §§ 721, 914 (Comp. St. §§ 1538, 1537), making state laws rules of decision and requiring the practice in civil causes to conform as near as may be to that in state courts, in view of Const. Amend. 7, preserving the right of trial by jury.

**3. Jury ☞31(7½)—New trial on issue of damages denies constitutional jury trial.**

Under Const. Amend. 7, preserving the right of trial by jury, federal District Court has no power to grant a new trial in an action for injuries on the issue of damages only, as such a restricted form of new trial, in which a single jury does not pass on all the issues, was not known to the law of England at the time the Constitution was framed.

**4. Words and phrases—"Preservation."**

"Preservation" is not creation; it is saving that which already exists, and implies the continuance of what previously existed.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Preservation.]

In Error to the District Court of the United States for the District of New Jersey.

Action by Matthew J. McKeon, by Patrick McKeon, his next friend, against the Central Stamping Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

See, also, 259 Fed. 917.

Samuel Kalish, Jr. (of Kalish & Kalish), of Newark, N. J., for plaintiff in error.

John W. Palmer, of Newark, N. J., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Matthew J. McKeon, by Patrick McKeon, his father and next friend, citizens of New Jersey, brought suit against the Central Stamping Company, a corporate citizen of New York. The cause of action was personal injury suffered by the minor plaintiff through the alleged negligence of the defendant's employés. A trial of the cause resulted in a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
264 F.—25

verdict for the plaintiff. On motion by the plaintiff for a new trial, the trial judge was of opinion the trial had been without error, other than that the damages assessed were not equal to the injury sustained. Instead, however, of following the usual course in such cases, of granting a new trial in which the whole case would be retried, the judge granted a restricted trial, wherein the sole issue to be determined was the amount of damages sustained by the infant plaintiff. On such new trial the defendant sought and offered to prove its entire defense to the plaintiff's motion; but the judge declined to receive such testimony, and instructed the jury that the sole issue before them was the amount of damage suffered by the plaintiff. A verdict on this restricted issue having been rendered, and judgment entered thereon, the defendant took this writ of error, and the question before us is whether the defendant has been denied that federal constitutional right that—

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

The question thus raised is basic in character. Such divided verdict, namely, one where 24 men have, in two separate juries of 12 each, passed on parts of the issues on which the judgment rests, and where neither the 24 collectively and neither of the 12 singly have passed on all the issues which support the judgment, constitutes such a departure from the unvarying trial course followed in our federal courts that, in the absence of any opinion on the record by the trial judge warranting such a course, it becomes the imperative duty of this tribunal to justify, or by judicial opinion and judicial decree forbid, a departure from the course of trial that has obtained in historic continuity in the courts of the United States from the foundation of the government.

Turning, then, to the briefs of counsel for the alleged grounds of justification for this course of procedure, we find that the state of New Jersey, the territorial limits of which state constitute the federal district wherein this cause was tried, by its practice act of 1912 (P. L. 1912, p. 397, § 73) enacted that—

"When a new trial is ordered because the damages are excessive or inadequate, and for no other reason, the verdict shall be set aside only in respect of damages, and shall stand good in all other respects."

It is therefore contended that by virtue of R. S. § 721 (Comp. St. §· 1538), which provides: "The laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply"—and in conformity with R. S. § 914 (Comp. St. § 1537), which provides: "The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the Circuit and District Courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the state within which such Circuit or District Courts are held, any rule of

court to the contrary notwithstanding"—the court below was justified and indeed constrained to follow the statute of New Jersey.

Assuming for present purposes that such statute of New Jersey is a constitutional law of that state, but noting, however, that in disposing of the case of Oppicci v. Erie Railroad Company, 108 Atl. 759, that court saw fit to state that by such disposition "the question of the constitutionality of ordering a new trial as to damages alone will not then be presented, and we ought not to decide it now," it would seem the case before us involves two federal questions: First, was the action of the court below in following the New Jersey statute warranted by the federal statutes above cited? And, secondly, if not so, was the restricted jury trial in the court below one which deprived the defendant of its constitutional rights that "the right of trial by jury shall be preserved"?

[1, 4] What do these few simple words, used in the Constitution, "the right of trial by jury shall be preserved," mean? Manifestly, in answering that question, we naturally ask: What did these words mean to those who used them when they were written into the Constitution? Now, in construing those words, one basic fact challenges our attention, namely, that there was something that was then preserved, for preservation implies the continuance of what previously existed. Preservation is not creation; it is the saving that which already exists. Seeing, then, we have here a word which implies the existence of something already in being, we find the call of the words "preserved," "shall be preserved," answered by a definite thing, to wit, "the right of trial by jury." And it will be noted that we are not dealing with an indefinite, but a very definite, concrete, well-understood thing, that at that time had such a recognized meaning that it was described, not as "a right of trial by jury," not as some or any right of trial by jury, but as "the right of trial by jury."

What, then, was "the right of trial by jury" which was in the minds of the makers of the Constitution? Light is thrown on this by the fact that, in our Declaration of Independence from Great Britain, we find that among the 27 charges made against "the present king of Great Britain" personally, the eighteenth was "for depriving us in many cases of trial by jury," and we called the attention, as set forth in the Declaration, of "our British brethren" to "the circumstances of our immigration and settlement here," and we then and there "conjured them by the ties of our common kindred" to disavow these usurpations. From this it is quite evident historically that the trial by jury of which King George had deprived us was the trial by jury to which as British colonists and subjects we were then entitled, and which our then fellow British subjects were conjured to disavow as personal usurpations by that arbitrary monarch, and, upon which disavowal of the king's action not being made by the people of Great Britain, we based our justification for seceding from that kingdom.

Having, then, assigned denial of the right of trial by jury as one of the causes and justifications for declaring our independence, and although such trial by jury was preserved in criminal cases by

the Constitution itself, yet the omission to preserve it also in civil cases was made one of the strong arguments against adoption of the Constitution; indeed, its adoption was only secured on the implied understanding that it, with other omitted provisions, would be embodied in those amendments, which were at once passed. These historic facts are referred to by the Supreme Court in Parsons v. Bedford, 28 U. S. (3 Pet.) 445, 7 L. Ed. 732, where Mr. Justice Story says:

"The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy. * * * One of the strongest objections originally taken against the Constitution of the United States was the want of an express provision securing the right of trial by jury in civil cases. As soon as the Constitution was adopted, this right was secured by the Seventh Amendment of the Constitution proposed by Congress, and which received an assent of the people so general as to establish its importance as a fundamental guaranty of the rights and liberties of the people."

Addressing ourselves, then, to the question of what was this trial by jury as then fixed by the common law of Great Britain, it will be seen that the jury of the common law of England, consisted of 12 men,[1] that it heard all the evidence pertinent to the issue raised by the pleadings,[2] it returned a single verdict,[3] and upon such verdict judgment was entered,[4] and if a new trial is granted it is a trial of the whole case.[5]

---

[1] "This [challenging] is usually done, till the legal number of twelve be completed; in which patriarchal and apostolic number Sir Edward Coke hath discovered abundance of mystery." 3 Blackstone's Commentaries, p. 365.

[2] "The jury are now ready to hear the merits; and, to fix their attention the closer to the facts which they are impanelled and sworn to try, the pleadings are opened to them by counsel on that side which holds the affirmative of the question in issue. * * * The opening counsel briefly informs them what has been transacted in the court above; the practice, the nature of the action, the declaration, the plea, replication and other proceedings, and, lastly, upon what point the issue is joined, which is there set down to be determined. * * * The nature of the case, and the evidence intended to be produced, are next laid before them by counsel also on the same side; and when their evidence is gone through, the advocate on the other side opens the adverse case, and supports it by evidence; and then the party which began is heard by way of reply." 3 Blackstone's Commentaries, 367.

[3] "When the evidence is gone through on both sides, the Judge, in the presence of the parties, the counsel, and all others, sums up the whole to the jury; omitting all superfluous circumstances, observing wherein the main question and principal issue lies, stating what evidence has been given to support it, with such remarks as he thinks necessary for their direction, and giving them his opinion in matters of law arising upon that evidence." 3 Blackstone's Commentaries, 375.

[4] "When they are all unanimously agreed, the jury return back to the bar. * * * The only effectual and legal verdict is the public verdict, in which they openly declare to have found the issue for the plaintiff or for the defendant; and if for the plaintiff, they assess the damages also sustained by the plaintiff in consequence of the injury upon which the action is brought." 3 Blackstone's Commentaries, 376.

[5] 3 Blackstone, p. 386. "For these and other reasons of the like kind, it is the practice of the court to award a new, or second trial," from which it will be seen the new trial is here referred to as a second trial; that is, a trial of the same kind as the first. This is also evident from the rest of the

Such was the trial by jury as stated in the Commentaries of Blackstone in 1758, and which in the intervening years before the Declaration of Independence had become familiar to the colonial lawyers, from whose number so many of those who framed the Constitution were drawn, for of the 39 men who signed the Constitution 24 were lawyers, some of whom had gone overseas and obtained their legal training in the London Inns of Court. As students of the English common law, they knew, in common with legal statesmen, such as Blackstone, what the "trial by jury" was, and it was that trial by jury they wrote into the Constitution of the new nation that it "shall be preserved." They knew it had stood the test of time and use on the other side of the sea, and they recognized the fact that a sustained use of such an institution in unbroken historic continuity in and of itself proved its worth, its time-tried past, and its time-to-be future dependability. They recognized, not only its value in securing to litigants their individual rights, but in constructive statesmanship that it went to sustaining the foundation of the nation; for, as Blackstone had written, nearly 30 years before our Constitution preserved it:

"The trial by jury has been, and I think ever will be, looked on as the glory of the English law. * * * It is the most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty or his person, but by the unanimous consent of twelve of his neighbors and equals."

Indeed, the Seventh Amendment, taken as a whole, makes it clear that the jury trial thus preserved is the jury trial of English common law, for as the first clause of the amendment preserves the use of the jury. viz. "The right of trial by jury shall be preserved," so the second clause provides that the fruit of such jury trial shall be preserved in accordance with the principles of the common law, viz. "and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of common law." In that regard Mr. Justice Story, in United States v. Wonson, 1 Gall. 5, Fed. Cas. No. 16,750, said:

"Beyond all question, the common law * * * alluded to * * * is the common law of England, the grand reservoir of all our jurisprudence."

This statement of Mr. Justice Story is in accord with the holdings of the Supreme Court of the United States. In Lowe v. Kansas, 163 U. S. 85, 16 Sup. Ct. 1033, 41 L. Ed. 78, that court says:

"Whether the mode of proceeding, prescribe by this statute, and followed in this case, was due process of law, depends upon the question whether it was in substantial accord with the law and usage in England before the Declaration of Independence, and in this country since it became a nation, in similar cases."

So in Murray v. Hoboken, 59 U. S. (18 How.) 276, 15 L. Ed. 372:

"To what principles, then, are we to resort to ascertain whether this process, enacted by Congress, is due process? To this the answer must be two-

paragraph, viz.: "But if two juries agree in the same or a similar verdict, a third trial is seldom awarded: for the law will not readily suppose that the verdict of any one subsequent jury can countervail the oaths of the two preceding ones."

fold. We must examine the Constitution itself, to see whether this process be in conflict with any of its provisions. If not found to be so, we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country."

[2] Seeing, then, that text-book writers on the common law of England and the Year Books and Reports of that country show no instance where trial by jury at common law has been other than a trial by one jury of all the issues involved in the case, and that the federal courts have preserved this common-law practice of jury trial in unbroken historic continuity in fulfillment of the constitutional guaranty, both in criminal and civil cases, we are justified in holding, also, that the action of the court below in following the New Jersey statute was not warranted by the federal conformity statute cited, and this for the reason that new trials, under the federal decisions, are not governed by the conformity statute. In that regard we note that in Missouri, etc., v. Chicago, etc., 132 U. S. 191, 10 Sup. Ct. 65, 33 L. Ed. 309, the Supreme Court of the United States held:

"In regard to motions for a new trial, and bills of exceptions, those courts are independent of any statute or practice prevailing in the courts of the state in which the trial is had."

In re Chateaugay Iron Co., 128 U. S. 554, 9 Sup. Ct. 153, 32 L. Ed. 508, it is also said:

"The object of section 914 was to assimilate the form and manner in which the parties should present their claims and defense, in the preparation for the trial of suits in the federal courts, to those prevailing in the courts of the state. * * * It does not apply to a motion for a new trial, nor affect the power of the Circuit Court to grant or refuse a new trial at its discretion, so it does not cover any other means of enforcing or revising a decision once made by the Circuit Court.",

In United States v. Train (C. C.) 12 Fed. 852, Mr. Justice Gray, sitting at circuit, held:

"The object of the former section [914] was to assimilate the form and manner in which the parties should present their claims and defenses, in the preparation for and trial of suits in the federal courts, to those prevailing in the courts of the state. It does not include state statutes requiring instructions to the jury to be reduced to writing; or permitting such instructions and certain papers read in evidence to be taken by the jury when they retire; or requiring the jury to be directed, if they return a general verdict, to find specially upon particular questions of fact involved in the issues. Nudd v. Burrows, 91 U. S. 426; Sawin v. Kenny, 93 U. S. 289; Indianapolis & St. L. R. R. v. Horst, Id. 291; West v. Smith, 101 U. S. 263. It does not apply to motions for a new trial, nor, whatever rule may be prescribed by the statutes of the state upon that subject, does it control or affect the power of the federal courts under the Judiciary Act of September 24, 1879, c. 20, § 17, and under section 726 of the Revised Statutes, to grant or refuse a new trial at their discretion. Indianapolis & St. L. R. R. v. Horst, above cited; Newcomb v. Wood, 97 U. S. 581."

[3] As, then, the federal statutes did not justify the court below in conforming to the statute of New Jersey regulating the grant of new trials, the only ground of justification of such course must be

the general inherent power of the court below to grant a new trial of the restricted character ordered in this case. In our view, such restricted form of new trial was one not known to the law of England at the time the Constitution was formed. Such restricted trial, where the whole case is not submitted in toto to a jury of 12 men, is not the trial by jury guaranteed by the Seventh Amendment of the federal Constitution, and was therefore beyond the power of the court below to impose on the defendant. In that conclusion this court does not stand alone, for in 1897 the late Judge Hammond, in Hughey v. Sullivan (C. C.) 80 Fed. 72, delivered an opinion which in substance covered all the questions here involved, cited the pertinent authorities, and discussed the principles involved, with a clearness and weight that appeals to those who regard the Constitution as the basic law of the nation, and are mindful of the right and duty of the federal courts to assert and preserve against encroachment their power and duty to enforce the Constitution. What Judge Hammond then said may be well here and now resaid:

"While the [state] Legislature may prescribe any rule of property or any rule of pleading or any rule of practice or any form of procedure, it cannot invade the domain of judgment either of the jury or its presiding judge, and direct what that judgment shall be, in the discharge of the respective or joint functions of either. These must remain under the federal Constitution, at least, to the government of the common law. It may be inconvenient, and sometimes, possibly, oppressive, that this restriction exists. Originally, the federal Constitution did not contain it as to civil cases, and it was subsequently inserted by the amendments with other similar restrictions upon legislative power; but, wisely or unwisely, it has fixed the common-law trial by jury as that to which we are bound, and only that."

So holding, the judgment entered below will be reversed, and the cause remanded, with directions to grant a new trial in accordance with the views herein set forth.