## E. A. NICKELS, IMPLEADED, ETC. *vs.* FRANK GRIFFIN.

MOTION TO EXCLUDE COUNSEL.—Professional confidence, once reposed, cannot be divested by expiration of professional employment. The application of this rule prevents M. from appearing for appellant.

MOTION TO STRIKE OUT DEPOSITIONS—JACOBS, C. J.—"The jurisdiction" * * * "appellate" * * * "as shall be *limited by law*" prescribed in the organic act, means the jurisdiction, limited and regulated by the Territorial legislature, there being no limitation by the constitution, or by act of congress, subsequent to the organic act.

Section 9, of the organic act allowing appeals, under such regulations, as may be *prescribed by law*, precludes the regulation of appeals by any other than legislative rule.

Conceding to this court the inherent power to make rules, governing appeals to it, in admiralty causes, it has made none; nor has the Supreme Court of the United States made such rules for it.

Territorial Courts are not a part of the Federal judiciary.

The expression "laws of said Territory" in the organic act means such laws as had an operative force, in this Territory, at the time of the passage of the organic act, and the expression, "as in other cases" in the same sentence, means cases prescribed by Territorial law. Hence the provision that appeals in cases arising under the laws of said Territory, should be as prescribed "in other cases" requires appeals in the former cases to be made as provided by the laws of the Territory.

CONCURRING OPINION OF LEWIS, J.—Territorial Courts are not Courts of the United States, in the meaning of the Third Article of the Federal Constitution, but are legislative Courts, by virtue of that clause in the constitution, enabling congress to make needful rules and regulations respecting the Territories of the United States.

The judiciary act, of 1789, and other acts conferring jurisdiction upon the United States Courts, not applicable to Territorial Courts.

Within the limitations prescribed by the constitution, the organic act, and other acts of congress, the Territorial Legislature may determine the appellate jurisdiction of this Court. Neither congress nor the Territorial Legislature have attempted to regulate admiralty practice in the District Courts of this Territory.

The District Courts of the Territory are free to adopt the admiralty rules adopted by District Courts of the United States.

No provision has been made in the admiralty rules for appeals to the Supreme Court of the Territory, nor has congress made any provision therefor; hence statutes of the Territory must control.

Admiralty cases must come to this Court by appeal.

DISSENTING OPINION OF GREENE, J.—Competent evidence defined.

A party cannot stipulate against the course and jurisdiction of the Court.

The grant to a Court of power to take cognizance of a class of cases of peculiar jurisdiction, carries with it the jurisdiction and course appropriate for the disposition of those causes, and departure therefrom by statute, will not be presumed, unless it appear the statute intended such departure.

"The judicial power," conferred by Sec. 9, organic act, includes all that power proper and necessary to be exercised in order to administer throughout the Territory the laws, civil and criminal, including admiralty.

A case arises when the application of the law to a particular set of facts becomes necessary, and no case can arise in this Territory, except under the constitution and laws of the United States or the laws of the Territory.

As an admiralty cause cannot arise under the laws of the United States, it must arise under the laws of the Territory.

The laws of the Territory include all written or unwritten laws other than laws of the United States in force for the time being in the Territory.

Under the Federal constitution and the laws of the Territory, admiralty cases may arise, and when they do, the jurisdiction is to be the same as the Circuit and District Courts of the United States in the same cases.

The exclusive original jurisdiction of all civil causes of admiralty and maritime jurisdiction vested in the District Courts of the United States, being conferred upon the Territorial District Courts, the jurisdiction of the Territorial Supreme Court must be appellate.

Sec. 9, organic act, providing that "writs of error, bills of exception and appeals shall in all cases be allowed from the final decision of said District Courts to the Supreme Court," under regulations " to be prescribed by law," confers a jurisdiction upon this Court beyond the power of the Territorial legislature.

The power given the Territorial legislature to regulate the manner of the appellate jurisdiction in admiralty, cannot be employed to limit the benefits growing out of, or incident to the right of appeal, as known to the appropriate admiralty forum.

It is within the jurisdiction and according to the course of an admiralty Court, (and hence this Court) upon appeal, to admit new proofs.

MOTION FOR LEAVE TO INTRODUCE NEW PROOFS—JACOBS, C. J.—Even if it should be admitted that new proofs in an admiralty cause could be introduced in this Court, such proofs could only be introduced upon a satisfactory showing first made to the Court. No showing, therefor, has been made.

GREENE, J., DISSENTING.—There are no laws or rules peculiar to American jurisprudence, applicable to this Court, which restricts a party therein, to other or less proof than he would have the right to produce, under the pure practice of the civil law.

At the civil law, on appeals, new proofs are admissible with freedom, and in the absence of rule, the same freedom should obtain in this Court.

An appeal in admiralty is but an exchange of tribunals for a re-opening of the entire case.

OPINION IN CASE.—A District Court of this Territory cannot properly be entitled a District Court of *the United States*.

The simple relation of master and servant, does not express the more complex relation between a shipmaster and his crew.

By some authors, relation of master to crew has been likened to that of parent to child, teacher to pupil, or the head of a family to his domestic servants.

The trust of the master is defined to be the care of his vessel, cargo, crew, passengers and the promotion and transaction of his vessel's business. Such care is the source, and measure of, and reason for, his authority.

The maintaining of good order aboard his vessel, is one of the duties of a master.

There is an implied contract in shipping articles of obedience on part of the sailor, and of protection on the part of the master.

As against himself the master is conclusively presumed competent to discharge his duties.

When the master permits his mate without sufficient cause to inflict personal injuries upon a seaman, he is responsible, as if personally guilty of the unlawful acts.

The lower Court properly refused to admit certain exculpatory evidence offered by the master.

Appeal from the Third District for King County.

*B. F. Dennison*, for appellant.

*J. J. McGilvra* for appellant.

Motion to exclude counsel.

Opinion by GREENE, Associate Justice.

The libellant below, appellee here, moves to exclude M., a Counsellor of this Court and Proctor of record in this cause from appearing as proctor or advocate for the appellant in this Court, for the reason that Mr. M. has so far been attorney and of counsel for appellee, heretofore, as to have professionally become possessed of facts material to appellee's rights in the cause before this Court. That such confidence has obtained between him and appellee appears to us sufficiently evident from the affidavits filed in support of this motion, and the pleadings certified to us in this transcript.

Counsel claims that he was retained by appellee specially, for a particular purpose; that he performed his professional duty for the accomplishment of that purpose; that he was thenceforth at liberty to accept a retainer in this cause adverse to his former client; that not until he was so at liberty did he act as proctor or advocate for appellant; and that throughout the conduct of this cause in the Court below, he has been suffered to so act, without objection.

But we are all of one mind, that the right of the appellee to make this objection has not lapsed by reason of failure to make it sooner; that professional confidence once reposed can never be divested by expiration of professional employment; and that it is an abuse of trust not be tolerated, for counsel to take the position that Mr. M. has taken in this cause.

Let a rule be entered, excluding Mr. M. from further appearing in this cause.

Motion to strike deposition from files.

Opinion by JACOBS, Chief Justice.

Motion to strike from the files of this Court the depositions taken by the plaintiff in error, since the trial in the District Court.

Counsel have argued and submitted for decision upon this
48

motion, the question, whether new evidence can be heard in admiralty causes in the Supreme Court of this Territory. Probably the better practice would have been to have asked this Court for leave to file and use such depositions and not at least to have filed them until leave had been asked for and obtained. But as the learned counsel have argued the whole question ably and fully upon this motion, and there is no necessity in our judgment for further argument we have concluded that it would be best to give our opinion on the main question involved. This leads to a consideration of the different provisions of the Organic Act of the Territory pertaining to the appellate jurisdiction of this Court. Hence:

The provisions in the Organic Act relating to the jurisdiction of the Courts of this Territory will be stated with an exposition of their meaning.

1. "The jurisdiction of the several courts herein provided for, both appellate and original and that of the Probate Courts and Justices of the Peace, shall be as limited by law;" with a proviso as to Justices of the Peace, and a proviso that the Supreme and District Courts shall possess chancery as well as common law jurisdiction.

Now what is meant here by appellate jurisdiction such "as shall be *limited by law?*"

1. We hold that the limitation here spoken of means a limitation by the constitution, or the Organic Act itself—or some law of Congress passed subsequent to the date of the Organic Act, or by the Legislature of the Territory, acting under and by virtue of the Organic Act. The proviso shows that this limitation had special reference to the action of the Territorial Legislature. Over all rightful subjects of legislation the Territorial Legislature may limit by law the jurisdiction of the Territorial Courts, both appellate and original, but they cannot take away or abridge the chancery or common law jurisdiction of said Courts. This is said, of course, with reference to the above quoted limitations with reference to Probate and Justice of the Peace Courts.

It is not necessary for us to inquire whether there are any

limitations in the constitution operating on the appellate juris-
diction of these Courts. Are there then any laws of Congress
passed subsequent to the date of the Organic Act, or any pro-
visions in the Act itself, or any laws mentioned in the Act
itself that define and limit or regulate the appellate jurisdiction
of this Court? None have been cited by the learned counsel
who have argued this motion, and we presume that none exist.
It must be remembered that the language is "as limited by
law." Now a rule is not a law, because it is not prescribed by
the supreme power, and jurisdiction neither appellate nor orig-
inal can be created by rule.

Then has the Territorial Legislature limited and defined
and regulated the appellate jurisdiction of this Court? All
concede that it has so far at least as that appellate jurisdiction
has been regulated at all. Then as the appellate jurisdiction of
this Court is only such as is limited by law, and as the Territo-
rial law is the only regulating law, I come to the conclusion
from this clause alone that appeals in admiralty must come here
in accordance with the Territorial law. See 1 Oregon Reports,
101.

But again, the Organic Act provides (9 Sec.) that : "Writs
of error, bills of exception and appeals, shall be allowed in all
cases from the final decisions of said District Courts to the Su-
preme Court under such regulations as may be prescribed by
law, but in no case removed to the Supreme Court shall trial by
jury be allowed in said Court."

The term "prescribed" has a well settled legal meaning.
It is evident that before an appeal can be taken from a final
judgment or decision or decree of the District Court, some pro-
visions must be made by law under and by virture of which the
appeal must be taken. They must be written out, enacted,
passed, before the appeal could be taken. It must be by law.
The enactments of the Legislature to be prescribed are called
regulations, because the right of appeal having been distinctly
given, the necessary steps to be taken to perfect that appeal be-
longs to the practice or procedure of the Court, and these reg-
ulations are but statutory rules upon the subject. A strict

construction of these words would require that these regulations should assume the form of legislative enactments.

Suppose for the sake of the argument that the right of appeal having been plainly given, that this Court by virtue of its inherent powers can make rules to govern appeals from the District Courts to this Court. It has made no special rules for the bringing up of appeals in admiralty causes from the final decisions of the District Court to this Court. Let us suppose that the Supreme Court of the United States has power to make such rules—has it made any? The Supreme Court of the United States has decided that these Courts are not United States Courts; that they are not and cannot be the depositories of the Federal Judiciary power, but that they are Territorial Courts upon which Congress has seen fit to confer jurisdiction over certain causes which in the States are cognizable in the Federal tribunals. U. S. Con. S. C. R., 7 Vol., 685; *American Insurance Co., et al., vs. Canter*; *Clinton, et al., vs. Englebrecht*, 13 Wallace, 434.

There are no rules adopted by the Supreme Court of the United States regulating appeals in admiralty from the Territorial District Court to the Supreme Court of the Territory. Rule 45 of the S. C. regulates the time when the appeal shall be taken, and Rule 53 what the clerk shall send up, but both of these rules are applicable in express terms to taking causes from the District to the Circuit Court of the United States. Now an appeal could not be taken by these rules alone, and it is notorious that the appeals in admiralty causes are actually perfected under the rules and regulations of the District Courts. This appeal came up here under the rules of the District Court of the Southern District of New York, adopted by the Territorial District Court of the Third Judicial District. The District Court of the Third Judicial District has no right to impose rules on this Court, much less has the District Court of the Southern District of New York. The rules of the last named Court are full, clear, and admirable, but they have no operative force in this Court without its adoption to say the least. Again we reach the conclusion that appeals in admiralty

must be brought here under regulations prescribed by the Territorial Legislature, for that is the only body which has prescribed by law such regulations. It is true that these regulalations are not as full and as complete as we could wish them to be, but we can argue nothing from this defect or want of fullness. The Territorial Legislature possess this power, and they have exercised it; the imperfect manner of its execution may be an argument for its further exercise, but none as to the power itself.

But again, the Organic Act provides that, "Each of the said District Courts shall have and exercise the same jurisdiction in all cases arising under the constitution of the United States and the laws of said Territory as is vested in the Circuit and District Courts of the United States; writs of error and appeals in all such cases shall be made to the Supreme Court of said Territory the same as in other cases."

The laws of the Territorial Legislature can confer no jurisdiction on the Circuit and District courts of the United States properly so considered. To give this clause such a limited construction is to make it an absurdity. What then is meant in this clause by the laws of said Territory? Does it not mean the laws which had an operative force in this Territory at the time of the passage of the Organic Act? In answer to this question let us inquire what laws were in force in this Territory at the time of the passage of said Act. The Organic Act as all know was passed March 2d, 1853. 10 Stat. U. S., 172.

1. The revenue laws of the United States were in force over this Territory by virtue of it having been a portion of Oregon Territory. Organic Act of Oregon, Sec., 16, 9 Stat. 323, U. S.

2. All the laws of the United States so far as the same or any provision thereof may be applicable. Organic Act of Oregon, Sec. 26.

3. The admiralty law of the United States which was then and had been since A. D., 1848, administered in the Territo-

rial courts of Oregon Territory. The cases in 1 Oregon Reports conclusively show that what is known as admiralty law was not only in force, operative in this Territory, but was administered by the Oregon courts as a part of the jurisprudence of the country.

By laws, is meant as used here, not only an operative and subsisting system or code, but I think the idea of continuance is involved also. Hence it does not mean those local laws which must perish by the passage of the Organic Act, unless saved by some clause therein, such as the laws of Oregon which were in force at the time of the passage of said Act, and which were continued by it until the Territorial Legislature could meet and act upon them. Organic Act of Washington, Sec. 15.

4. The Federal Legislation with reference to Oregon passed between Sept. 1, A. D., 1848 and March 2, 1853, the date of that Organic Act. Organic Act of Washington, Sec. 15, 10 Stat., 172.

The system of laws which I have enumerated, did give subjects of jurisdiction of the Circuit and District courts of the United States, and this construction makes the clause reasonable and harmonious, and this view must have been taken by Chief Justice Williams in the Oregon case cited above. This construction entirely removes the seeming absurdity that the Territorial Legislature can confer jurisdiction upon the Circuit and District Court of the United States.

Such being in our judgment the true sense of the phrase "laws of said Territory," let us consider the latter clause of the above quoted sentence: "Writs of error and appeals in all such cases, shall be made to the Supreme Court of said Territory the same as in other cases." Such cases must mean cases arising under the constitution, the Revenue laws, such laws of the United States as are applicable to our condition, including the laws passed by Congress with reference to the Territory of Oregon from September A. D., 1848, to the date of the passage of our Organic Act, and the admiralty laws of the United States as administered by the Territorial courts of Oregon.

The criminal laws of the United States as administered in the Territorial courts, are included in the laws applicable to our condition. Cases arising under all of the above enumerated laws are of Federal cognizance in the States and jurisdiction the same as that vested in the Circuit and District courts of the United States is given to the District courts of this Territory, and an appellate jurisdiction given to the Supreme Court. Appeals in such cases must be made in the same manner as in other cases, or the same as other cases. What other cases? The answer is, cases in which appeals are provided for by regulations prescribed by Territorial law. The term "regulations" means legislative rules. The power to make these rules is given to the legislature by the Organic Act. Admit that the legislature can delegate the power to make rules to the courts, the legislature has made some rules, the courts others. These rules, no matter by whom made, are the regulations prescribed, and appeals can only be made to this Court in conforming with them.

From these provisions, I infer that new evidence cannot be admitted in this Court in admiralty cases, no more than it can in equity cases. In this I am supported by the Supreme Court of the late Territory of Oregon. 1 Oregon, 101.

The Supreme Court at that time consisted of Williams, Olney and Deady. And the counsel employed in that case were able admiralty lawyers.

One more consideration and I dismiss this point in the motion: If the rules of the United States Supreme Court are binding upon this Court at all, I cannot see why they should not be just as operative in common law cases, and cases in equity as in admiralty causes. If this be so, then all the legislation of this Territory, and all other Territories, has been wrong. It has been sanctioned and sanctified by long use and the non-disapproval of Congress. See reasoning of Chief Justice Chase in the Utah case quoted above.

A remark made by the late Chief Justice of this Court in the opinion written by him in the case of the sloop *Leonede vs. United States*, decided at the December term, A. D., 1861, has

been quoted and relied upon by the learned counsel for plaintiff in error.

Chief Justice Hewitt in delivering the opinion of the Court in the case alluded to says:

"It will be remembered that the Supreme Court of the Territory, stands, so far as admiralty is concerned, in the place of a United States Circuit Court." 1 Washington Territory Reports, page 178.

Nothing is more manifest than that an appeal can be taken from the District Court of the Territory to the Supreme Court of the same as fully and as clearly as one can be taken from the District Courts of the United States to the Circuit Court of the United States. In that sense the remark is strictly true The proposition was too elementary for an independent proposition and solemn adjudication, and hence it occurs as a parenthetical clause in a long sentence. The remarks of courts and Judges must always be understood to be made with reference to the question raised, or the facts before them.

It was not a question in that case whether new evidence could be heard in admiralty causes in the Supreme Court of the Territory. We cannot do the learned Chief Justice, who delivered the opinion in that case, the injustice to believe that he ever intended to express an opinion on so important and difficult a question when it had not been argued by learned counsel, and when it was not before him for decision.

As to the testimony of Mr. Hilton, or that portion of it contained in the record, I can only say that I regret that the record does not show the reason of the exclusion. I had supposed that the clerk who wrote down the testimony by the consent of the parties, had made a minute of the circumstances attending its exclusion. I do not feel myself at liberty to state those reasons. Causes here must be heard upon the record alone. But as testimony may be withdrawn by counsel and thus go out of the case legally, or be excluded by order of the presiding judge under certain circumstance legally, and if nothing more than the exclusion appears, the presumption is that it was done legally and properly.

The view entertained by me on the main proposition renders it unnecessary to pass upon the special reasons argued in the motion to strike from the files the deposition of Mr. Dowling. That was taken since the trial in the Court below.

Concurring opinion of LEWIS, Associate Justice.

It is insisted by the appellee that this cause must be heard in this court upon the same evidence on which it was heard in the district court.

If this court occupies the position of a circuit court of the United States when exercising jurisdiction in admiralty, it is competent to hear further proofs.

The question as to the status of these courts has been much discussed.

It seems, however, that the late case of *Clinton vs. Englebrecht* has definitely settled this question, wherein it is held following the case of *Am. Ins. Co. vs. Canter* in 1 Peters, that these courts are not United States courts within the meaning of the third article of the constitution in which the judicial power therein conferred can be deposited; but that they are legislative courts ordered by the congress of the United States, in virtue of the clause in the constitution which enables congress to make all needful rules and regulations respecting the territories of the United States.

Hence when congress in any enactment speaks of circuit and district courts of the United States, such act has no reference to the courts of the territories.

It follows then that the judiciary act of 1789 as well as all other acts of congress conferring jurisdiction upon United States courts and defining the manner of its exercise, has no application to the territorial courts, unless made so by special act.

Congress has taken this view of the question, for we find that by special statute, the fee bill of 1842 of the United States courts was made applicable to the courts of the territories. 1 Brightly, 272. So also as to authentication of Records, 2 U. S. Stat., 409. So in divers sections of the revenue and national currency act.

It follows then that we must look to the provisions of the organic act and such other legislation by congress upon that subject as has been made applicable to the territories, in order to ascertain the jurisdiction of this court and the manner of its exercise.

Section 9 of the organic act, provides that the judicial power of the territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace. That the jurisdiction of these several courts, both original and appellate, shall be as limited by law.

Provided, however, that the district and supreme courts shall possess chancery, as well as common law jurisdiction.

That writs of error, bills of exceptions and appeals shall be allowed in all cases from the final decisions of the district courts to the supreme court under such regulations as may be prescribed by law.

That no trial by jury shall be allowed in the supreme court.

That writs of error and appeals shall be allowed from the final decisions of the supreme court to the supreme court of the United States in the *same manner* and under the *same regulations* as from the circuit courts of the United States.

That each of the district courts shall have and exercise the same jurisdiction in all cases arising under the constitution and laws of the United States and laws of the territory as is vested in the circuit and district courts of the United States, and that writs of error and appeals shall be made in such cases to the supreme court of the territory in the same manner as in other cases.

Subject to the above limitations the territorial legislature may fix and determine the original and appellate jurisdiction of these courts. .

That is to say, they may say in what cases appeals may be allowed from the inferior courts to the district courts; may determine what courts shall have original jurisdiction and what appellate; must allow writs of error and appeals in all cases

from the district courts to the supreme court, and provide the same shall be made.

May confer on the several courts such jurisdiction, civil and criminal, under the territorial laws as they deem proper, not inconsistent with the provisions of the organic act, or the national constitution.

Congress has made no attempt to provide a practice for these courts, nor to regulate the time or manner of taking appeals from the district to the supreme court.

The supreme court of the United States, however, have held that the rules of practice in equity for the. courts of the United States are applicable to the courts of the Territories. *Orchard vs. Hughes*, 1 Wall., 73; and that court by rule 92 has accorded to the territorial courts sitting in equity certain powers therein conferred on United States courts.

The chief justice, in delivering the opinion in *Clinton vs. Englebrecht*, 13 Wall., declares that there is nothing in that decision inconsistent with the case of *Orchard vs. Hughes.*

The supreme court of this territory has also held that the chancery practice of the United States courts is applicable to these courts.

Now no attempt has been made to regulate the admiralty practice of the district courts of the territory either by the territorial legislature or congress. In the absence of any provisions on this subject we would be left to the general law maritime. But if the district courts sitting in equity are governed by the equity practice of the United States courts, why not so in admiralty cases—in fact the argument is stronger; for the courts of the United States have exclusive jurisdiction in admiralty, and it would seem reasonable that when congress conferred upon the territorial courts the same jurisdiction that is exercised both by the circuit and district courts of the United States, that these courts, when exercising any such jurisdiction, ought to be governed by the rules of practice adopted for said courts. If this be the correct view of the matter, then we have have a uniform practice. admiralty in all the courts exercising such jurisdiction.

But there is no provision made in the admiralty rules for an appeal from the district to the supreme court of the territory, nor has congress made any provision therefor; hence such appeal must be made in accordance with the provisions of the statutes of the territory.

Now the laws of the Territory provide that the practice and proceedings in chancery causes shall be as provided by the laws of the United States and rules in equity adopted by the Supreme Court of the United States.

Under these laws and rules there may be some question as to the exact mode of getting a case to this court on appeal, but there is no doubt but that when here, it is to be tried *de novo* on the same pleadings and evidence upon which it was heard in the Court below.

In my view, then, a case in admiralty must get here and be heard in this Court in the same manner as a cause in equity.

Doubtless the legislature will correct these matters as soon as their attention is called to the uncertainties with which they are surrounded.

Dissenting opinion by GREENE, Associate Justice.

This motion is to strike from the files certain depositions filed by appellant for his use on the hearing, and also a certain deposition of one Hilton taken in the Court below and excluded in that Court. They were none of them used before the District Court, and are sought to be introduced here on appeal, under the civil law rule, *non probata probandi.*

For the purposes of this motion, it must be assumed, that there is in this Court an appeal pending wherein the motion is made.

To these depositions, it is objected generally, that this Court has no jurisdiction to entertain new proofs; and against this objection, two main points are made: First, as regards Hilton's deposition, that appellee, by stipulating that the deposition may be used on appeal subject to all objections to the competency and relevancy of the testimony, has precluded himself from objecting to its introduction; and, second, as regards

all the depositions, that in appeals in admiralty in this Court new proofs are admissible.

As to the first point, I am of opinion, that by his stipulation, the appellee must be held to have consented, as fully as a party litigant, merely as a party litigant, can consent, that the deposition so far as the testimony in it shall be pronounced competent and relevant may be used here. By competency of anything, I understand its legal capacity or fitness for the function which it is called upon to fulfill. Thus we speak of the competency of testimony, witnesses, courts. The function of testimony is to prove facts; of witnesses to testify; of courts to take judicial cognizance. I do not understand that any question of competency of testimony any more than of relevancy can arise, where no testimony at all is admissible. Competency should not be confounded with admissibility. The evidence contained in this deposition, tried by the rules of law for discriminating between good and bad evidence may be perfectly good, and therefore perfectly competent, and yet this *Court may have no jurisdiction to hear it. The testimony may be competent to prove the facts, the Court incompetent to receive the testimony. The question of admissibility by reason of competency of the Court must be determined before the question of admissibility by reason of competency of the testimony can arise.

But while of opinion that appellee has, as far as by stipulation he could, precluded himself from making here his general exception, I think, nevertheless, that he can make it. For he could so stipulate. He was powerless to stipulate against the course or judisdiction of this Court. And if admission of new proof be contrary, as he contends, to the course of this Court, his stipulation in that particular is absolutely void. It is as if he had made none. This Court's jurisdiction and course are fixed by reasons of public policy, and cannot be varied, without the lawfully expressed consent of the people. An illustration may be found at common law. A judgment in favor of a party is so conclusively presumed to have as a record contract his assent, that he cannot, in general, be heard to ob-

ject to it on error, and yet it is well settled that by reason of a judgment being in his favor a party is not estopped from objecting by writ of error that it is contrary to the lawful course of the Court. The law is the highest compact, and no man can ever be precluded from asserting and insisting upon that compact, and disregarding all his words, writings, deeds and records to the contrary. Into an agreement which he has no power to make, he can never have infused any power to bind him.

Whether, then, the objection of appellee to this deposition be regarded as an objection to the competency of the testimony, or to the competency of the Court, it can be made. In the one aspect, it can be made under, in the other notwithstanding, his stipulation. I proceed, therefore, to discuss appellant's second point, and to inquire whether in appeals in admiralty to this Court new proofs are admissible.

In advancing to the solution of this problem, certain obvious considerations present themselves at the outset, and justly claim the right to accompany and guide the mind to its conclusions. Such considerations are the following: That the peculiar jurisdiction and course of a court which takes cognizance of a particular class of subject matter, must be presumed to be founded in public policy and the fitness of things; that the bare grant to a court of power to take cognizance of a class of cases of peculiar jurisdiction invests that Court with the jurisdiction and course appropriate for the disposition of those cases; and that, such appropriate jurisdiction and course being presumed founded in public policy, no departure therefrom is to be deemed intended by any statute, unless the statute (which is the measure of changing public policy,) plainly intends the departure.

The fundamental statute, under which this Court lives and moves, is the organic act of the Territory. That act, in its 9th section, creates the Territorial courts. It vests in them "the judicial power of the Territory." And by "the judicial power of the Territory" is to be understood, all that judicial power proper and necessary to be exercised, in order to administer and enforce throughout the Territory the laws, civil and criminal, from time to time existing over it. This judicial power

must include judicial power in admiralty cases, for undoubtedly this Territory has never since its acquisition been destitute of admiralty laws, under which such cases might arise. *American Ins. Co. vs. Canter*, 1 Pet., 511.

By a subsequent clause of the section, the jurisdiction of the several courts, both appellate and original, are to be "as limited by law." It matters little for the interpretation of the act, whether the phrase "by law," as occurring here and in many other places in the statute, be held to mean by *Territorial legislation*, or to mean simply, what it says, by "law;" for the law which will in fact limit, will be the law applicable, whether law, of rightful Territorial, or paramount Federal, legislation.

The only limitation by Federal legislation, to the jurisdiction of this court in admiralty, of which I am aware, is in another clause of the same section. This limitation is indirect, but positive, and operates to exclude all original jurisdiction. But, for our present purpose, it is sufficient to show the exclusion as regards civil causes. The clause provides, that "each of said District Courts shall have and exercise the same jurisdiction in all cases arising under the constitution of the United States and the laws of said Territory, as is vested in the Circuit and District Courts of the United States."

A case arises whenever the application of the law to a particular set of facts is necessary. It cannot arise under any particular law, or number of laws, except when without the law it could have no existence. It arises under the law which is to be applied to adjudicate the case. See *Am. Ins. Co. vs. Canter*, 1 Pet., 511, and Letter Dan'l Webster to Berrien, Jan. 14, 1842.

It is impossible, that any case should arise in this Territory, unless under the constitution and laws of the United States, or under the laws of the Territory. No case can arise, unless under some law. No other law than those mentioned exists here. An admiralty civil cause cannot arise under the laws of the United States. (*Am. Ins. Co. vs. Canter*, 1 Pet., 511.) It must, therefore, arise if at all under the laws of the Territory. "The laws of the Territory" are all laws, other

than laws of the United States written and unwritten, in force for the time being over any part, or parts, or all of the Territorial area. Admiralty law *prevails* here now, and was in force here before the Territorial government at present existing was organized. It was here before the Federal constitution or statutes were. They found it here.

Taking now the constitution of the United States, article III., section 2, paragraph 1 and the laws of the Territory together, we find that under them certain cases—cases of admiralty and maritime jurisdiction among others—may arise, of of which in the States jurisdiction is vested in circuit and district courts of the United States. In all cases so arising, the district courts of the territory are to "have and exercise the same jurisdiction" "as is vested in the circuit and district courts of the United States." Manifestly, "the same jurisdiction" can only be exercised in the same cases in which circuit and district courts of the United States can exercise jurisdiction; for jurisdiction in other cases would be a jurisdiction not "the same." Plainly, also, in all cases, of which jurisdiction is vested in circuit and district courts of the United States, and which may arise under the constitution of the United States and the laws of the territory, the jurisdiction exercised by territorial district courts must be "the same"—no greater, no less, no different. District courts of the United States have "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction." (Act 24, Sept. 1789, §9, 1 Stat., 76.) Territorial district courts, having "the same jurisdiction" in civil causes of admiralty and maritime jurisdiction" arising "under the constitution of the United States and the laws of the territory," have, therefore, "exclusive original cognizance" thereof. The exclusive original cognizance being thus vested in the territorial district courts, the jurisdiction of the supreme court is limited to be appellate.

As if to ensure the exercise of this appellate jurisdiction, it is provided, in the same section 9 of the organic act, that "Writs of error, bills of exception and appeals shall be allowed in all cases from the final decisions of said district courts to the

Supreme court, under such regulations as may be prescribed by law," with the single qualification, that "in no case removed to the supreme court shall trial by jury be allowed in said court." The qualifying clause seems to have been inserted *ex puncto cautionis*, that there might be no mistake of power to introduce a jury into the appellate court; for it is to be remembered, that in one at least of the States, in a peculiar statutory kind of appeal so-called, trial by jury in the appellate court takes place, and that in the case of *The United States vs. Wonson*, (1 Gall., 5,) it was contended that in a U. S. statute giving appeal, the word "appeal" was to be construed to embrace common law cases, and to authorize trial by jury. If I understand the meaning of the entire provision, Congress intended by it to fix in the supreme court of the territory a certain jurisdiction, or range of jurisdictions, beyond the power of the territorial legislature to change or diminish it, and at the same time to leave the territorial legislature free, by law not inconsistent with these provisions and other laws of Congress, to regulate the taking and conduct of appeals, exceptions and writs of error. The "writs of error," "bills of exception" and "appeals"—things technically known to the law—*"shall be allowed in all cases;"* an absolute right of review, by proceedings of wellknown outlines, natures and effects, is guaranteed parties in *all* cases, and vested beyond question in the Supreme Court. Something having definiteness and substance is secured to the court and to parties before it by this language; and whatever definite and substantial is so secured is put beyond the power of the territorial legislature to deny, alter or curtail. If, under the power to regulate, there is intended to be given, or is left, to the territorial legislature any power to declare what the supreme court shall take jurisdiction of, or what sort or amount of jurisdiction it shall exercise, when a case from the district court gets within its reach, or that it shall apply to any case of one kind of jurisdiction (as of admiralty) being before it, strange principles, procedure or usages, altogether new, or belonging to a distinct kind of jurisdiction (as of chancery or common law), then Congress has in one and the same form of words secured

50

:to the supreme court a certain jurisdiction and to parties certain rights, and given to the territorial legislature the power to make that jurisdiction nugatory and those rights unavailing. I am constrained to think, that this provision with its imperative phraseology, assures to an appellant, not whatever the territorial legislature may be pleased to call an appeal, but an appeal known to chancery if the case be in chancery, an appeal as known to admiralty if the case be in admiralty, with all the benefits growing out of, and incident to, such an appeal in its appropriate forum.

That clause of the organic act, which I have shown to give the Territorial District Courts exclusive original jurisdiction in admiralty civil causes, occurs subsequent to the one I have just been considering, and, after conferring on District Courts (as we have seen) the same jurisdiction in certain cases as is vested in Circuit and District Courts of the United States, goes on to provide, that "writs of error and appeal in all such cases shall be made to the Supreme Court of said Territory the same as in other cases." It seems to me that Congress did not intend by this to limit or define the jurisdiction or course of the Supreme Court; but only to regulate the making of writs of error and appeal in certain cases from District Courts. By this provision, may have been intended one or more of four things: ·Either, first, that no different mode of procedure is to obtain in getting such cases before the Supreme Court from what obtains in other cases; or, second, that writs of error and appeals in such cases as well as in others are to be allowed "under such regulations as may be prescribed by law;" or, third, that in such cases as well as in others appeals and writs of error are to lie; or, fourth, that in such cases, as well as in others, appeal and writs of error shall be made "to the Supreme Court of the Territory." The ambiguity at first view is so glaring as to perplex the choice. But on mature consideration, I incline, contrary to my first impressions, to take the fourth supposed meaning to be the true one. And for these reasons: First, had Congress desired to make uniform practice for writs of error and appeals, it would have said so. This clause is ineffectual to express or

accomplish such a desire; for it leaves the Territorial legislature, in all other cases and therefore in all these too, free to prescribe as many different times and modes of taking appeal and errors, as there may be amounts in controversy or kinds of rights or property involved.  Second, if Congress by this provision intended merely, that writs of error and appeals in these cases should lie, or should be made under regulations to be prescribed by law, then the provision was uselessly inserted, because but a repetition of what had already been provided. Third, the provision is necessary to make clear the practice when a District Court exercises the same jurisdiction as a Circuit Court of the United States, and it does not seem to be necessary for any other purpose.  From Circuit Courts of the United States, error and appeals lie direct to the Supreme court of the United States.  From a District court of the Territory exercising the jurisdiction of a Circuit court of the United States, error and appeals are to be only to the Supreme court of the Territory.  Had this not been expressed, one might plausibly have maintained, that the Supreme court of the United States was the proper court of review for final decisions of the District court acting as a United States Circuit court.  Likewise, it might have been argued, that when the Territorial District court exercised the same jurisdiction as a District court of the United States, there being no acting United States Circuit court distinct from, and superior to, the Territorial District court, appeals and error lay direct to the Supreme court of the United States.  Hence, it was necessary, in the organic act, to say, that "Writs of error and appeals in all such cases shall be made to the Supreme court of said Territory the same as in other cases."

This provision, then, is not intended to provide, what the writ of error or appeal shall be, or what by them shall be carried up, or even how or when they shall be made, but only that they shall be made to the Supreme court of the Territory.  It throws no additional light upon what the jurisdiction or course of this court is upon appeals in admiralty.

I have now reviewed all the provisions of the organic act,

which in my opinion need consideration, to enlighten us as to the jurisdiction and course of this court in civil causes of admiralty jurisdiction; and I am not aware of any subsequent law of congress on the subject.

I conclude, that this court has by grant and limitation contained in the organic act, jurisdiction of appeals in civil cases of admiralty and maritime jurisdiction, and has no other jurisdiction of such cases. The grant of jurisdiction of such appeals necessarily endows this court for the sake of such appeals with all the jurisdiction and course belonging to an appellate court of admiralty. It is within the jurisdiction and in accordance with the course of such a court, and of this court as such a court, to admit new proofs. *Hawthorne vs. U. S.*, 7 Cr., 107; *The San Pedro*, 2 Wh., 123, 3 Wh., 78; *The Samuel*, 3 Wh., 77; *The Mabey*, 13 Wall., 738-741; *Rose vs. Himely, et al.*, Bee R., 313; *United States vs. Wonson*, 1 Gall., 5; *Anon*, 1 Gall., 22.

Again, an appeal in civil cases of admiralty and maritime jurisdiction, is by the organic act, in most positive language, granted to suitors, and the duty of entertaining it imposed upon this court. Such an appeal is a thing of well defined substance. It puts the case in the appellate court as a case to be heard *de novo* according to the course and usages of courts of admiralty, (5 Cr. 282, 283, and authorities there cited,) open for the introduction of new proofs as may be just and equitable. (See cases cited *supra*.) There is no other proceeding or thing in admiralty that is known by the name of "appeal," and if congress, in giving an appeal in admiralty causes, did not mean this, it is impossible to tell what it did mean until it supplies a definition. Until a better definition is given, it is safe to rely on that which the civil law gives, and has been accepted and acted upon by all the appellate courts of admiralty in this country from the beginning.

It may, possibly, be urged that the word "appeal" is used in the passage I have quoted from the organic act, in a general sense, and merely to indicate appellate jurisdiction. But I am

satisfied, that this cannot be successfully maintained. The word is used, to my mind, clearly in a technical sense. It is continually coupled, and by coupling contrasted, with a writ of error. And as congress is certainly talking technical language, when it says "writs of error, bills of exception," I reasonably conceive it still to be speaking technically, when it adds, "and appeals."

What congress has given, it has not authorized the Territorial legislature by regulations to take away. It has given an appeal in admiralty. The allowance of the appeal may be regulated by the Territorial legislature, provided the regulations do not derogate from the very nature and substance of the thing given. But the nature and substance of the appeal in admiralty is *to remove the whole proceedings, and to re-open the pleadings, the facts and the law.* It is, therefore, in my opinion, immaterial to inquire, whether Territorial legislation favors or forbids introduction of new proofs on appeals. Whatever Territorial legislation may have been, it cannot have taken from this court jurisdiction to receive new proofs in this cause. The power given by the organic act to the Territorial legislature to limit the jurisdiction of the courts and to regulate the allowance of appeals and writs of error, is not operative to enable the legislature to limit or to regulate contrary to what is fixed and assured by the same organic act.

If any of the foregoing views be inconsistent with any of the decisions of the Supreme court of the United States, the inconsistency is below the *mimimum visibile* of my mind.

The Oregon decision of *Cutter vs. The Steamship Columbia, etc.,* (Oregon, 101) is, I acknowledge, flatly opposed to my own conclusions. That case comes with the prestige of association with great names, but bears no badge of careful consideration. Great Homer sometimes nods.

Objection has been made to one of these depositions, that it was obtained by fraud on the part of appellant. The fraud sufficiently appears from the affidavits read, and the deposition should be suppressed. The deposition of Hilton should, in my opinion, conformably to the foregoing views and the stipulation of the parties, be admitted. The remaining depositions

should not be stricken from the files on the ground that new proofs are inadmissible. When the appellant offers to read them he may, however, possibly be obliged to show preliminarily, that there is some good reason for their first appearance in this court.

The motion, in my opinion, so far forth as it concerns the deposition obtained by fraud should be *allowed*; so far forth as it concerns the other depositions, it should be *denied.*

Motion for leave to introduce further proofs.

Opinion by JACOBS, Chief Justice.

A majority of this court has already decided that this cause must be heard here on the testimony and other proofs taken in the District court and embodied in the record sent up here duly certified. Since so deciding, so far from having heard reasons sufficient to change our convictions, those convictions have been strengthened by further investigation and reflection. We concede that the question is a novel one, and not entirely free from doubt. But one decision has been produced exactly in point, and that is the Oregon decision before alluded to by us. 1 Oregon, 101.

But suppose we have mistaken the law, does it follow that the defendant has an absolute right to introduce any kind or species of testimony here, without making a showing either of its kind or the necessity of its first introduction here? We think not. If he can, then he can select his own tribunal in which to make his defense. In fact it is claimed, and the claim rests upon the same basis, that he cannot make what proof he sees fit here, but he can allege what he may deem fit in the first instance here without showing any reason why it was not done in the District court. He claims it as a matter of right, and as a matter over which this court can exercise no discretion. If this be so, what becomes of the exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction given to the District courts by the act of congress of Sept. 24, A. D., 1789? We are of the opinion, that he must not only move this court for leave to introduce further proofs here but that, he

must make a showing satisfactory to the court of the necessity of their first production here.

As no showing whatever has been made, we feel ourselves compelled to deny this motion on this ground if no other existed. And it is so ordered.

Dissenting opinion by Greene, Associate Justice.

This is a motion by the appellant, respondent in the court below, to introduce new proofs in this court. My views, as to the jurisdiction and course of this court as an appellate court in admiralty causes under the organic act, with special reference as to whether under any circumstances new proofs are admissible here, have been sufficiently set forth in an opinion heretofore filed upon the motion of appellee to strike from the files certain depositions. To decide that motion, however, I did not deem it necessary to inquire or give an opinion, whether the court should in the exercise of this jurisdiction receive all new proof competent and relevant that may be offered, or should require upon production of new proofs a preliminary showing of good cause for the first appearance of them here. The latter question seems raised by this motion, and to it I shall address what further I have to say.

Since the motion was made, I have given the subject considerable thought and what examination I could with the limited stock of authorities at command, and my conclusions are: First, that whatever may be the laws and rules peculiar to American jurisprudence in force regulating practice in this court, there is none applicable which restricts a party in this court, to other or less proof than he would have a right to produce under the pure practice of the civil law; and, second, that at the civil law on appeals, new proofs are adducible with the same freedom as in the lower Court, and in the absence of any rule prescribing reasonable restrictions, the same liberty should obtain here.

I regret I have not been able to refresh my memory and enlarge my information by a reference to any general treatise on procedure at the civil law. But from what I have been able

to remember and to gather from works at hand, I am much mistaken, if the true theory of appeal at the civil law be not, that every party is entitled in equity and good conscience to a just decree on the real facts; that his pleadings and proofs are made and taken in aid, and ought not to stand in the way of this result; and that, if he has failed to get in an inferior court the equity which belongs to his real case, he is entitled to make another and a better effort to get that equity, in the court of review. Accordingly, it may be not untruly said, that the whole and very matter of dispute—not merely the matter as pleaded or proved, but the matter itself of dispute—is removed to the superior tribunal. The Court below is displaced by the Court above. The whole case—pleadings, facts, law, proceedings, all —is carried up bodily, and re-opened for fresh action throughout. But, there is doubt about the introduction of new witnesses *ad libitum.*

In my opinion, the motion should be *allowed.*

Preliminarily, in this case, it is urged by appellant, that it appears from the record, that all the proceedings in the lower court were "*coram non judice.*" The cause is entitled, as " In the United States District court for the Third Judicial District of Washington Territory." The libel is addressed, "To the Honorable O. Jacobs, Judge of the District court *of the United States* for the Third Judicial District of Washington Territory." In the recorded proceedings in the court below, that court is designated and described as the "District court *of the United States.*"

A District court of this Territory cannot properly be entitled a court of the United States. It is simply the District court of its proper District, and should not be otherwise entitled. But the objection seems to us of little moment. Looking to their origin alone, rather than to their name and functions given in the originating act, there is color for styling the District courts, courts of the United States. The prevailing practice in this Territory, from the day of their creation, has been to call them United States District courts. The respondent cannot have been prejudiced or misled by the erroneous title.

The record comes to us certified from the proper District court. The proper court appears properly entitled in the record, if we omit to read the words "United States" and "of the United States." Reading those words, makes a title belonging to no court in this Territory. Those words we, therefore, reject as surplusage.

This case comes on to be heard, agreeably to the opinion of the majority of the court, heretofore announced, upon the testimony received in the court below, and no other. Upon that testimony, we base our conclusions in the cause.

The libel was filed in the Third District, against the master and first and second mates of the bark Sampson, to recover damages for injuries to the person of libelant, a seaman in the service of that bark. The first mate was not served with process. The master and second mate answered severally. The District court decreed the sum of twenty-five hundred dollars damages, in favor of libelant, against both the second mate and master. The master alone appeals to this court.

The injuries, for which the libelant claims damages, were immediately inflicted by the first and second mate, on board the bark, at sea.

The vessel is two hundred and forty feet long. She has a quarter deck raised about seven feet above the main deck. The first step to ascend from the main deck to the quarter deck is about one hundred and twenty feet aft of the fore-rigging. The cabin is under the quarter deck. On the main deck, aft of the fore-rigging, is the carpenter's shop.

It was daylight in the morning, and the captain's watch on deck, when an altercation arose between the first mate, one Dowling, and the libellant, Griffin. Griffin and Dowling were at the fore-rigging; the second mate was in the cabin, at breakfast; the captain was on the quarter deck.

The first mate found fault with a racking put on by libelant, and, irritated by retorts of the latter, struck him on the mouth and attempted to kick him. Griffin drew a knife, and threatened to cut the mate, if he did that again. Dowling, say-

51

ing he would shoot libelant, ran aft, turned into the carpenter's shop, and presently re-appeared with an iron bar, with which, upraised, he advanced upon libelant, saying he would brain him if he did not put up the knife. At this juncture, the captain, having become aware of the situation, suddenly arrived between the mate and man, and ordered the latter to put up his knife, the former to put down the bar. Each hesitated to obey. The orders were repeated. Then the mate threw the bar down, picked it up again and laid it on the waterways, and, with an exclamation that he would shoot libelant, hasted to the cabin for a revolver. The libelant put up his knife.

Soon the mate returned, revolver in hand, and with him came the second mate. Coming up to libelant, the second mate seized him by the clothing, threw him to the deck, face downwards, drew the knife from its sheath and plunged it in his back; while the first mate, handling the pistol, struck the fallen man a violent blow with that on the head.

It does not appear that the cut was serious. The blow on the head fractured the skull, has already resulted in partial paralysis, and may yet issue in death.

No misbehavior of the man subsequent to the first affray, provoked these last acts of violence. To prevent them, the master did nothing but cry to the mates to stop.

Such, briefly, as shown by the evidence, are the main, substantial facts.

The testimony is contradictory as to the acts and locality of the master, whether he stayed by and talked with libelant or moved away from him, while the mate was procuring the pistol. We incline to think the evidence preponderates to show that he walked aft, and, when some twenty or thirty steps away from libelant, was met and passed by the mates proceeding to their attack. But, in our view of the master's duty, we do not, under all the circumstances, deem his exact whereabouts material.

The allegations of the libel sufficiently correspond with, and well propound the state of facts actually proved.

Such being the case, appellant contends that he is not to be charged for these wrongful acts of the officers of his ship; and relies for his exoneration upon that doctrine of the law of master and servant, which acquits the master from liability for acts of the servant, outside of his service, or, in some cases, when disobedient to express orders.

Were that familiar doctrine to be taken as applicable to and decisive of this case, we would perhaps have little hesitation in applying it to relieve the appellant. But the simple relation of master and servant by no means expresses the complex connection between a shipmaster and his mates. His mates are a part of his crew. His crew are aboard to enable him to maintain and make profitable the business of the ship. And his full relation to his mates can only be apprehended, by considering at the same time his concurrent relations to all that is under his charge. Now, if we examine what the master's relation to his mates and responsibility for their acts are —first, with reference to the general care that he owes to all that is committed to him, and, secondly, with regard specially to the particular care he owes to each seaman—we shall discover, that in either view, the master of the Sampson ought to be held liable for the injuries to his seaman, the libelant.

1. The relation of master to crew—mates included—has, by Casaregis (Disc. 136 n., 14), and upon his authority by Valin (Com. tome 1, 449), and Lord Tenterden (Abbott Shipping, 136), and upon the authority of the English judge, by a number of other judges, been likened to that of parent to child, of teacher to pupils, and of head of family to domestic or other servants. But these comparisons, though serving well enough for illustrations, or even analogy, in particular cases, by no means well define the exact relation of master and seaman, which really cannot be gathered from any partial aspect furnished by a particular array of facts in any one case, but must be ascertained by generalization from the mass of authoritative text and decisions. What, thus ascertained, is the position of the master, we shall with sufficient precision for our present purpose, endeavor to define.

The master occupies a peculiar station of trust. His trust is the care of his vessel, cargo, crew and passengers, and of the promotion and transaction of his vessel's business. For the purpose of, and as essential to, the discharge of this trust, adequate authority vests in him over all his domain of care. The care is the source and reason of the authority. The authority is properly present only to make effective the care. Whenever, therefore, there is a dereliction in the care incumbent on the master, and a consequent failure by him to exercise the authority which that care if active would have summoned to its aid, as well as whenever the authority exercised is called into exertion by evil intent or wantonness and not by the supervising care, or transgresses the just bounds which a faithful care should have prescribed as its range, the master is liable.

One incidental subject of this care, opening a field for the exercise of this authority, is the good order necessary for the maintenance and fruitful issue of the vessel's business. Without peace aboard ship, the master's trust would be set at naught and the ventures of merchants fail.

Had the master, in the case at bar, after he once became aware of the affray between the first mate and Griffin, been rightly mindful of what was going on around him, had he been merely as observant as an unimplicated casual spectator, and still more had he been alert with proper care and authority, he could not have failed to notice, what every other witness of the scene, whose testimony we have, did notice, the disposition of the mate to continue the affray, and could not have failed effectually to interfere to secure the order of the ship. He did not exercise the care he owed. Failing to exercise the care, he naturally failed to exert the just authority which that care would fitly have called to its support. His neglect to exercise any such authority as the occasion demanded from him, and as would have operated to restrain the mates completely, is equivalent to a positive refusal to interfere any further than he did in fact interfere effectually, and to an express sanction of the course of the mates. The consequence to the libelant is the same as if the master had peremptorily ordered the mates to do

what they did.   It is but just that the consequence to the master himself should be the same.   This court proceeding, as it does, on principles of natural justice, must hold the master liable.

2.   But should we leave this general view of the case, and look only at the care due from the master to the man before the mast, as affecting the liability of the master for the acts of the mates, we should arrive at the same goal.   In the shipping articles are impliedly embraced an engagement of obedience on the one part and of protection on the other.   The sailor, in return for his engagement of prompt and entire submission to the order and discipline of the ship, is entitled to the protection, which the exercise of a reasonable vigilance on the part of the master for preserving that order and discipline will afford.

Hence, perhaps, arises the comparison of a master to a parent.   In the former, as in the latter, authority and care unite.   "It is his [the master's] duty to watch over them [the seamen] with paternal attention, so long as they belong to the ship," says Story, J. (*U. S. vs. Ruggles*, 5 Mason's, 192.)   And again:  "The master has the supreme authority on board of his ship, and has, moreover, a sort of parental responsibility and duty devolved upon him for the due exercise of it," (2 Sumner, 1, 11); and the learned judge goes on to declare as part of this parental duty, that if he is present, he is bound to interfere and restrain chastisement by subordinate officers, if improper in nature or character.   "The master is responsible for any punishment inflicted on board the vessel, unless in his absence, or when he is prevented by force from interfering;" and, "If he had reason to suppose that such a thing might be done, *and did not take pains to be present and interfere*, he will be liable."   (Dana's Seaman's Manual, page 194; Pritchard's Adm. Dig. [Pa. Ed.] page 179.)

The master is conclusively presumed, as against himself, to be competent.   In this competency, is included an at least ordinary knowledge of human nature, an at least ordinary quickness to observe what may be passing in his presence, and an at least ordinary prudence and ingenuity to avert a threatened

breach of discipline.   All these faculties he was bound, under the shipping contract, to use for the protection of the libelant. It is impossible to believe, upon the evidence, that he did not have occasion to use them to prevent the injuries propounded in the libel, or that, having the occasion, he did use them.   The presumption being that he possessed them, and the evidence showing that there was occasion but failure to use them, the just inference is that he recklessly omitted to give the libelant the benefit of the use of them.   Such reckless omission amounts to a consent to the consequences of his omission.   Those consequences are, as the evidence discloses, the injuries for which the Court below has given damages against him.

The behavior of the master, being construed acquiescence in law, is well propounded in the libel as "standing a witness" to the wrongs, "without in any manner endeavoring to prevent" them; and as "countenancing, encouraging," aiding and abetting the mates.

At the same time, by his conduct, he legally adopted the mates' acts as his own; and, in correct legal phrase, what they did, he may be said to have done himself with them.   So that we see no objection to the libel, from its containing both forms of description.

We do not think it necessary to discuss critically the testimony of the witnesses Griffin and Meagher.   We consider the liability of the master would be clearly established, were all their testimony expunged from the record.

The district judge correctly refused to permit the master to prove as matter for his own exculpation, what passed in the cabin between him and the first mate, after the affray.   Whatever it was, it was certainly no part of the *res gestæ*, and we can conceive of no other ground, nor is any other ground alleged, for its admission.

The damages awarded by the District court seem to be none too large.   The libelant, not having appealed, cannot ask for an increase.   They will stand as our finding.

We take pleasure in acknowledging the assistance, which

we have received from the faithful and exhaustive efforts of the advocates in this cause.

Let a decree be entered for the libelant against the master, for $2,500, and costs.